**DeSISTO COLLEGE, INC. and Loren E. Horner, Plaintiffs–Appellants**

v.

**Thomas P. LINE, et al., Defendants–Appellees.**

No. 88–3333.

United States Court of Appeals, Eleventh Circuit.

Nov. 15, 1989.

Roderick MacLeish, Jr., Richard J. Landau, Fine & Ambrogne, Boston, Mass., Stephen H. Durant, Martin, Ade, Birchfield & Mickler, P.A., William E. Kuntz, Jacksonville, Fla., for plaintiffs-appellants.

J. Stephen McDonald, John M. Robertson, Keith R. Mitnik, Robertson, Williams, Mitnik & McDonald, P.A., Orlando, Fla., for defendants-appellees.

Before FAY and HATCHETT, Circuit Judges, and ALLGOOD *, Senior District Judge.

---

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

FAY, Circuit Judge:

This appeal involves the propriety of Federal Rule of Civil Procedure 11 ("Rule 11") sanctions imposed on counsel for Plaintiffs–Appellants ("Counsel") for signing pleadings without having first made reasonable inquiry into the facts and the law of the case. The district court found, first, that Counsel neglected to follow the court's instructions on restructuring the Second Amended Complaint to form the Third Amended Complaint, and instead signed and filed a Third Amended Complaint which violated the court's order. Second, the court found that Counsel, in signing the Second Amended Complaint and its predecessors, had subjected two defendants to unwarranted litigation to which they would not have been exposed had counsel sufficiently researched this Circuit's precedent on legislative immunity. For those reasons, the district court ordered Counsel to pay the attorneys for Defendants $6000 as a sanction. Counsel challenges the above findings and the sanction of the trial court. We hold that the district court did not err in sanctioning Counsel and therefore AFFIRM the action taken by the district court.

FACTS

On January 2, 1987, Plaintiffs–Appellants, DeSisto College ("the College" or "DeSisto"), an institution created to serve students with learning disabilities and emotional disturbances, and Loren Horner, a DeSisto student, filed a complaint through their attorney, Roderick MacLeish, against Defendants–Appellees, Paul Mazade and Thomas Line.[1] Also included as defendants were Arthur Pratt, Alan Mills, Rodney Griffin, John Purser, and Carlin Washo, who are not involved in this appeal. Defendants were sued both individually and in their official capacities as members of the Howey-in-the-Hills Zoning Commission or Town Council. The twenty-five page complaint alleged two counts of deprivation of protected rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983 and one count of discrimination against the handicapped in violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794. In essence, Plaintiffs accused Defendants of unconstitutionally and illegally manipulating and deliberately misconstruing Howey-in-the-Hills' zoning ordinances, as well as abusing their official positions, to deny Plaintiffs the opportunity to establish DeSisto College in the town of Howey-in-the-Hills.

Plaintiffs exercised their right to amend their pleadings as a matter of course, filing a First Amended Complaint with the district court on January 15, 1987. This complaint comprised twenty-eight pages. In it, Plaintiffs joined the town of Howey-in-the-Hills ("the Town" or "Howey") as a defendant, added a fourth count alleging facts making a declaratory judgment necessary, and appended a request for a declaratory judgment stating that Town officials' enforcement of the old zoning ordinances against the College and passage of new zoning ordinances affecting the College were unconstitutional.

Two weeks later, defendant Line made a motion to dismiss the First Amended Complaint for failure to state a claim under either 42 U.S.C. § 1983 or § 504 of the Rehabilitation Act. Upon stipulation by Plaintiffs of dismissal of the Rehabilitation Act count, the district court granted Line's motion to dismiss that count in the First Amended Complaint. The court otherwise denied Line's motion, finding that Plaintiffs had sufficiently stated causes of action for violations of due process and equal protection in the other counts of the complaint. Subsequently, the other defendants made a motion to dismiss the First Amended Complaint. While that motion was pending, however, the magistrate ordered Plaintiffs to file a second amended complaint, which was done on July 10, 1987. Consequently, Defendants' motion to dismiss the First

---

**1.** Keith Murphy, another DeSisto student, was also originally a plaintiff in this case, but later withdrew.

Amended Complaint was denied by the court as moot.

The Second Amended Complaint expanded the previous complaint to fifty-one pages containing 174 paragraphs, ten counts and ten separate requests for relief. The first forty-one pages comprised 139 sizable paragraphs of factual allegations concerning various actions of the College and College personnel, the Defendants, and persons uninvolved in the lawsuit, from 1971 through 1987. In the succeeding thirty-eight paragraphs, Plaintiffs alleged that Defendants, by their actions in the preceding 139 paragraphs, had violated Plaintiffs' due process and equal protection rights under the United States and the Florida Constitutions.[2]

Defendants thereupon filed a motion to dismiss the Second Amended Complaint for failure to state a claim upon which relief could be granted. Defendants Pratt, Griffin, Mazade, Purser, Line and Washo moved to have the suit dismissed against them both in their individual and official capacities; defendant Mills moved for dismissal of the suit against him in his official capacity only.

In their memorandum of law supporting their motion to dismiss, Defendants enumerated five grounds for their belief that Plaintiffs had failed to state a cause of action against Defendants. First, Defendants claimed that the complaint violated Fed.R.Civ.P. 8(a) and (e) ("Rule 8")[3] in that the complaint did not make a "short and plain statement of the claim" and was not "simple, concise, and direct." Further, Defendants averred that the complaint contained many allegations which were extraneous, immaterial, irrelevant, and/or derogatory. Because of these defects in the complaint, Defendants could not figure out without excessive sifting which allegations

pertained to which count or theory of liability. Moreover, the complaint did not specify which defendants were liable for the various wrongs alleged by Plaintiffs. On this basis, Defendants requested that the court dismiss or strike the complaint.

Second, Defendants maintained that a § 1983 cause of action required Plaintiffs to have first exhausted all state administrative and judicial remedies, and that Plaintiffs had failed to do so.

Third, Defendants argued that Plaintiffs had no cognizable cause of action against Defendants in their individual capacity, as Plaintiffs alleged wrongs involving Defendants' performance of legislative and administrative functions regarding zoning and Town management. In such activities, Defendants contended, the law grants persons carrying out legislative duties absolute immunity and persons executing administrative tasks qualified immunity from suit.

Defendants then declared that no cause of action existed against them in their official capacities, asserting that the Federal Rules of Civil Procedure discouraged the naming of officeholders in pleadings, preferring that the office be sued, and that the real remedy lay against the Town of Howey and not the Defendants in their official capacity.

Finally, Defendants stated that Plaintiffs had failed to allege any violation of Plaintiffs' due process or equal protection rights, contending that the zoning ordinances challenged by Plaintiffs were all lawfully and constitutionally created and enforced and that no discrimination occurred.

Plaintiffs in response refuted the assertions of Defendants. Specifically, they maintained that the complaint did in fact

---

**2.** Specifically, Plaintiffs enumerated four separate counts of violations of 42 U.S.C. § 1983, one count for federal declaratory judgment under 28 U.S.C. §§ 2201 and 2202, two counts for declaratory judgment under Fla.Stat. §§ 86.011 *et seq.*, and one count of violation of Article 1, § 2 of the Florida Constitution. In addition, Plaintiffs alleged violations of Fla.Stat. §§ 163.-3215 and 166.041.

**3.** Fed.R.Civ.P. 8 states in pertinent part:
(a) A pleading which sets forth a claim for relief ... shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief[.]
   *     *     *     *     *     *
(e)(1) Each averment of a pleading shall be simple, concise, and direct.

fully comport with the Federal Rules governing pleadings. They justified the length of their complaint on the ground that the case was complex, with multiple parties on both sides and involved several transactions over a substantial period of time. Plaintiffs further asserted that the material which Defendants described as extraneous was in fact relevant to the case even if such allegations did not all directly involve parties to the suit. In addition, Plaintiffs denied that the manner in which the complaint was pled affected the liability of Defendants in their official capacities. Plaintiffs argued that Defendants were incorrect about the need to exhaust all other remedies before bringing a § 1983 action, and that due process and equal protection violations had taken place which should be remedied under § 1983. Finally, Plaintiffs claimed that an exception to absolute legislative immunity that exists for legislators acting in an administrative fashion applied to Plaintiffs' case, and that Defendants lacked the good faith necessary to benefit from the qualified privilege accorded administrative functionaries.

The district court in considering Defendants' motion to dismiss and Plaintiffs' opposition decided for Plaintiffs on most of the alleged grounds for dismissal. The court flatly rejected Defendants' exhaustion argument as an incorrect statement of the law. The court also implicitly refused to dismiss the complaint for failing to allege any infringement of Plaintiffs' constitutional rights, although the court's order nowhere expressly denies Defendants' motion on such grounds. The court further allowed Plaintiffs to sue Defendants in both individual and official capacities.

Regarding individual capacity, however, the court found that the law of this Circuit entitles local legislators to absolute immunity unless the legislators act outside of their legislative role. While the court recognized three different tests created by the First, Third and Fifth Circuits, respectively, to ascertain when a legislator is acting within his/her role, the court was persuaded by the Fifth Circuit test which is also binding precedent in this Circuit. Under the Fifth Circuit test, a local legislator is granted absolute immunity for all actions taken in furtherance of legislative duties. Thus, to the extent that Defendants were allegedly liable for activities such as voting, debate and response to public opinion, the court found that Defendants were absolutely immune from suit. Since the complaint also alleged that Defendants engaged in enforcement activities which are not legislative, however, the court found that Plaintiffs could pursue Defendants individually for such activities. The court further held that the affirmative defense of qualified immunity did not constitute a basis for dismissal of the suit.

Because the Second Amended Complaint mingled impermissible claims based on Defendants' legislative activities with legitimate causes of action premised on Defendants' administrative acts, the court dismissed the Second Amended Complaint with leave to amend to include only the latter type of claims.

> [T]he Court will leave it up to the plaintiffs to sort through their complaint and make it clear what administrative activities, if any, are attributable to each defendant.

Order of November 10, 1987, at 13.

Finally, the court agreed with the plaintiffs that the complaint was not too long, given the complexity of the case and the number of parties involved. In fact, the court gently chided the Defendants for not appreciating the specificity of such a detailed complaint which put Defendants on notice of what Plaintiffs intended to prove. Since the court required Plaintiffs to file a further amended complaint, however, the court in its order gave explicit instructions for restructuring the Second Amended Complaint:

> 5. a. The plaintiffs shall plead each count and the facts supporting each count separately.
>
> b. The plaintiffs shall plead separate counts for each defendant.
>
> c. That plaintiffs shall plead counts based on defendants' actions in their individual capacities separately from counts

based on defendants' actions in their official capacities.

*Id.* at 16–17. The court acknowledged that this format would lengthen the complaint and make it somewhat repetitious but anticipated that such pleading would clarify the issues being litigated.

Plaintiffs submitted their Third Amended Complaint to the court on December 7, 1987—105 pages and 556 paragraphs long. Included as defendants were Line, Pratt, Mills and Griffin, individually and as members of the Zoning Commission; Mazade, individually, as Mayor of Howey and as a Town Council member; and the Town itself.[4] Plaintiffs did plead each count separately and pled separate counts against each defendant, as ordered by the court. The separate counts against each defendant, however, did not specify whether the defendant was being held liable in his individual or official capacity; the counts merely addressed each defendant by name. Further, in the facts supporting each count, Plaintiffs apparently did no more than state and restate under each count identical paragraphs from the Second Amended Complaint, merely cutting and pasting the paragraphs so that each count somewhat addressed the specific actions of the defendant named. For example, each count begins with a statement of the parties, the first two paragraphs redundantly describing who the plaintiffs are[5] and the third describing the defendant against whom the count is alleged.[6] Finally, the 105 pages and 556 paragraphs comprised only nine counts, requiring each defendant still to sift through an average of 62 paragraphs and 11½ pages of background facts to find out in exactly what way he was alleged to have harmed Plaintiffs.

Defendants responded by making a motion to dismiss the Third Amended Complaint and for sanctions against the Plaintiffs. In the memorandum accompanying the motion, Defendants alleged a host of defects in the complaint, but the gravamen of the request for sanctions was that, after a year of ongoing litigation and explicit judicial instructions on the proper format for the complaint, Plaintiffs had failed to file a sufficient complaint stating a legal basis for their claims. Defendants accused Plaintiffs of defying the court's order by not clearly delineating the capacities in which claims were being made against Defendants and continuing to request relief against Defendants as individuals for official actions for which they were immune. Further, Defendants requested that the court levy Rule 11 sanctions against Counsel for Plaintiffs, not only for signing the defective Third Amended Complaint, but also for needlessly signing and pursuing claims against erstwhile-defendants Purser and Washo for nearly a year when the law of this Circuit clearly provided Purser and Washo with absolute immunity from suit for their legislative activities.

Plaintiffs first moved to amend their Third Amended Complaint to add a phrase to the five counts not directed against the Town to indicate that these five counts named the defendants in their individual capacity. That motion was denied. Plaintiffs then filed their opposition to Defendants' motion to dismiss and for sanctions, taking the position that the Third Amended Complaint fully comported with the district court's order of November 10, 1987. Plaintiffs contended that their complaint clearly directed the official capacity allegations against the Town, with the remaining counts addressing the Defendants as individuals, and that they further explained

---

**4.** Defendants Purser and Washo were voluntarily dismissed from the suit by Plaintiffs.

**5.** 1. Plaintiff DeSisto College, Inc. is a Florida not-for-profit corporation. The College is located in Howey-in-the-Hills, Florida. The College is licensed by the Florida State Board of Independent Colleges and Universities and provides an intensive therapeutic and educational program for students with learning disabilities and emotional disturbances.

2. Plaintiff Loren E. Horner is a student at the College. Plaintiff Horner's address is 411 South Palm Avenue, Howey-in-the-Hills, Florida.

These two paragraphs occur nine times within the complaint and are only one example of the repetition contained therein.

**6.** Including four separate, identical descriptions of the Town of Howey.

their intentions in a telephone conversation with counsel for Defendants in mid-December. In addition, Plaintiffs stated that they "scrupulously observed the Court's observations regarding the distinction between the Defendants' activity related to enactment as opposed to activity related to enforcement."[7] Plaintiffs also asserted that the repetitious nature of the complaint was necessary to "render each count comprehensible." *Id.* at 11. Finally, Plaintiffs argued that they did not violate Rule 11 in including Washo and Purser as defendants in the past. Rather, Plaintiffs asserted that until the district court entered its order of November 10, 1987, establishing the law that would govern the case, a number of tenable legal arguments existed which supported their theory of liability on the part of these two ex-defendants.

The district court, in its order addressing the motion to dismiss and for sanctions, found that Plaintiffs' Third Amended Complaint violated the November 10 order in not separating the counts for Defendants' actions taken in their individual capacity from those taken in their official capacity, and in not pleading each count and the facts supporting each count separately but rather "again lump[ing] all of the defendants' actions together nine times." Opinion and Order of March 31, 1988, at 4. The court observed that the Third Amended Complaint obscured Plaintiffs' claims instead of clarifying them, particularly in identifying what conduct of each defendant violated Plaintiffs' constitutional rights. Finally, the court disagreed with Plaintiffs that the flaws in the complaint could be remedied by simple amendment. Instead the court dismissed the Third Amended

Complaint and gave three pages of even more explicit instructions on how the Fourth Amended Complaint should be structured.

On the question of sanctions, the court held that Mr. MacLeish, Counsel for Plaintiffs, had taken a position on the issue of legislative immunity insupportable under the precedent of this Circuit and that his reliance on a First Circuit case was "unreasonable and could not have been conducted after reasonable inquiry." *Id.* at 9. On that basis, the court also found that inclusion of Washo and Purser as defendants in the first three complaints was done without reasonable inquiry. Additionally, the court determined that Mr. MacLeish signed the Third Amended Complaint without carefully reading and following the court's directives contained in the November 10 order. Thus the court imposed two sanctions for signing pleadings in violation of Rule 11,[8] $1000 for signing the Second Amended Complaint including Washo and Purser as defendants and $5000 for filing the Third Amended Complaint in violation of the court's previous order. Both figures represented the court's estimation, based on figures submitted by counsel for Defendants, of the expenses incurred by Defendants' attorneys to respond to the pleadings signed in violation of Rule 11.

## I. JURISDICTION

■ Before we address the merits, we must first determine our jurisdiction to hear this appeal. Clearly, the sanctions imposed by the district court were part of an intermediate order and not a final deci-

---

7. Plaintiffs Memorandum In Support of Their Opposition to Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint and For Sanctions, at 6.

8. Fed.R.Civ.P. 11 states in relevant part
   Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name[.] ... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reason-

able inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law[.] ... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it ... an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

sion appealable under 28 U.S.C. § 1291.[9] Nor do any of the categories of interlocutory orders granted immediate appealability under 28 U.S.C. § 1292 apply to this case. The Supreme Court, however, in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), determined that the concept of finality expressed in § 1291 should be given a practical rather than a strict construction. Creating what would become known as the collateral order doctrine, the Court authorized appellate review of conclusively determined claims, separable from and collateral to the merits, too important to be denied review, and too independent of the merits to justify deferring review until final disposition of the whole case. *Id.* at 546, 69 S.Ct. at 1225. *See also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (granting practical finality to trial court orders conclusively determining a disputed question, resolving an important issue completely separate from the merits, and effectively unreviewable on appeal from final judgment).[10]

This circuit has followed the Supreme Court in implementing the collateral order doctrine. *See, e.g., Robinson v. Tanner*, 798 F.2d 1378, 1380–81 (11th Cir.1986), *cert. denied*, 481 U.S. 1039, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987); *Haitian Refugee Center v. Meese*, 791 F.2d 1489, 1493–94, *vacated in part on other grounds*, 804 F.2d 1573 (11th Cir.1986); *United States v. C.G.*, 736 F.2d 1474, 1476 (11th Cir.1984); *In re Covington Grain Co., Inc.*, 638 F.2d 1357, 1360 (5th Cir.1981).[11] Further, this court has held that discovery sanction orders are immediately appealable when the sanction was against "a non-party who might not be able to obtain review from a final judgment," *Robinson*, 798 F.2d at 1381 (citations omitted), and that such a principle would hold for sanctions ordered under Rule 11. *Id.* at 1380 n. 4.

The case of *Ortho Pharmaceutical Corp. v. Sona Distris.*, 847 F.2d 1512 (11th Cir.1988), is most apposite to the subject case. In *Ortho*, plaintiff sued defendant and defendant moved to dismiss for lack of personal jurisdiction. Only after plaintiff spent several thousands of dollars in defending the motion to dismiss did defendant drop what the trial court found to be a meritless, unreasonable defense. On motion of the plaintiff, the trial court assessed Rule 11 sanctions against defendant and defendant's attorneys in the amount of $35,851.55, payable "forthwith." *Id.* at 1515. When defendant filed an appeal to challenge the sanctions, this court stated that "[w]hen a Rule 11 sanctions [sic] directs a non-party ... to pay immediately— that is, before entry of final judgment— significant attorney fees and costs, this court has jurisdiction to hear immediate appeal of the sanction order." *Id.*[12]

**9.** 28 U.S.C. § 1291 (1982) provides that "[t]he courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States, ... except where a direct review may be had in the Supreme Court." The Supreme Court has described a final decision as "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945) (citing *St. Louis, I.M. & S.R.R. Co. v. Southern Express Co.*, 108 U.S. 24, 28–29, 2 S.Ct. 6, 8, 27 L.Ed. 638 (1883)).

**10.** Counsel for Plaintiffs–Appellants also argues that we may take jurisdiction under the "Forgay–Conrad" rule expressed in *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848), which allows review of an interlocutory order that directs immediate delivery of physical property and subjects the losing party to irreparable harm if review is delayed until the conclusion of the case. We believe that the collateral order doctrine of *Cohen* is sufficient to dispose of the issue of jurisdiction. We therefore do not address the applicability of the Forgay–Conrad rule.

**11.** The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**12.** We noted, however, that the size of the sanction was an important factor in our decision. "[N]ot all immediately payable sanctions imposed under Rule 11 (or other rules) will be appealable under the collateral order exception. While the issue may be separable and discrete from the central controversy of the case, the small size of the sanction will not meet the 'significant issue' component of the second criterion under *Cohen*." *Ortho*, 847 F.2d at 1516.

We believe that the instant case is sufficiently comparable to *Ortho* to warrant similar treatment. This case, like *Ortho*, meets the elements set out in *Cohen*. The order sanctioning Mr. MacLeish was the final disposition of the propriety of his signing the Second and Third Amended Complaints, an issue entirely distinct from the merits of the action brought by Plaintiffs–Appellants. Mr. MacLeish was ordered to pay substantial attorney fees to Defendants' counsel within 20 days, for all practical purposes "forthwith." Finally, as Plaintiffs–Appellants' brief points out, without immediate review, counsel's right to challenge the sanctions might be forever lost should the parties, for example, elect to settle their dispute before final judgment were entered by the court or if Plaintiffs–Appellants decided not to appeal whatever final judgment the trial court rendered. We therefore hold that we have jurisdiction to hear this appeal under the collateral order doctrine.

## II. STANDARD OF REVIEW

This court very recently set out the standard of review for sanctions imposed under Rule 11. In *Thomas v. Evans*, 880 F.2d 1235, 1239 (11th Cir.1989), we said that "An attorney or a party may be sanctioned under Rule 11 for filing a pleading that: (1) has no reasonable legal basis; (2) has no reasonable factual basis; or, (3) is filed for an improper purpose.... Regarding the scope of appellate review of a Rule 11 sanction, factual determinations and the decision to impose sanctions are within the discretion of the district court and are subject to review only for abuse of that discretion. *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir.1987). Determining whether a pleading or motion is legally sufficient, on the other hand, involves a question of law subject to de novo review. *Id.*" (citation omitted). *See also Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174–75 (D.C. Cir.1985).

■ Counsel maintains that he was sanctioned for signing legally deficient complaints and thus, as the sanctions went to the legal sufficiency of the pleadings that he drafted, this court should review the trial court's rulings *de novo*. We partially disagree. We consider the trial court's finding that the Third Amended Complaint did not conform to the instructions detailed by that court to be a factual determination subject to review for abuse of discretion. Likewise, the trial court's decision to impose sanctions is subject to abuse of discretion review. The conclusion that Counsel unreasonably signed the Second Amended Complaint including certain defendants on the basis of a legal argument rejected in this Circuit, however, is a decision regarding the legal sufficiency of the complaint that is subject to *de novo* review.

## III. DISCUSSION

### A. The Third Amended Complaint

■ The district court ordered Counsel to do three things to reform the Second Amended Complaint into a Third Amended Complaint. Counsel was to (a) "plead separate counts for each defendant," (b) "plead counts based on defendants' actions in their individual capacities separately from counts based on defendants' actions in their official capacities," and (c) "plead each count and the facts supporting each count separately." Upon Defendants' motion to dismiss and for sanctions, the trial court found that Counsel had disobeyed the court's order in not pleading separate counts for Defendants' actions taken in their individual capacity versus those taken in their official capacity, and in failing to plead each count and the facts supporting each count separately.

We cannot find that the trial court abused its discretion in determining that Counsel violated the order of November 10, 1987. The style of the case clearly indicates that Defendants were being sued in both their individual and official capacities; each count, however, merely identifies the specific defendant without any hint of in which capacity the defendant was being held liable. Counsel seeks to justify this apparent disregard for the court's order by his reliance on *Kentucky v. Graham*, 473

U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), in which the Supreme Court held that a plaintiff need no longer bring official-capacity actions against local government officials since the local government could now be sued directly. *Id.* at 167 n. 14, 105 S.Ct. at 3106 n. 14 (citing *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Thus the counts against the Defendants in their official capacities, Counsel maintains, were subsumed in the counts against the Town, with the remaining counts referring to the Defendants in their individual capacities.

In the abstract, Counsel's reasoning is correct. None of his reasoning, however, is plain or even implicit in the Third Amended Complaint that he filed. Instead, he submitted a complaint styled against Defendants in their individual and official capacities. Counsel later defended his decision to include Defendants as officials as an "excess of caution ... to avoid the implication that these Defendants did not contribute to the Town's unconstitutional actions in their official capacities." [13] In other words, the complaint addressed the conduct of the Defendants as officials and individuals, but without separating out the two capacities in the body of the complaint—directly flouting the district court's order. In such a situation, the district court did not abuse its discretion in ruling that Counsel should be liable for Rule 11 sanctions. [14]

Nor did the district court err in finding that Counsel failed to plead each count and the facts supporting each count separately. Counsel attempts to argue that his approach of repeating background facts nine times throughout the complaint and of mingling the activities of various defendants and non-parties in each count, although the court instructed Counsel to separate the facts against each defendant, was, at worst, a reasonable misreading of the trial court's order. We disagree. The court unambiguously requested counsel to "make it clear what administrative activities, if any, are attributable to each defendant" [15] by sorting out into separate counts what each defendant did in either his official or personal capacity that violated Plaintiffs' rights. We concur in the trial court's finding that "no reasonable reading of the November 10, 1987, Order could have resulted in such pleading" [16] as the Third Amended Complaint, and thus find no abuse of discretion in holding Counsel liable for sanctions.

Having properly found Counsel liable for Rule 11 sanctions, the trial court had discretion to impose a monetary sanction on Counsel. [17]

### B. The Second Amended Complaint

■ Rule 11 states that

[t]he signature of an attorney ... constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it ... is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

The existing law on legislative immunity of this Circuit extends the immunity granted by the Supreme Court to federal, state, and

---

**13.** Brief for Plaintiffs–Appellants at 36–37.

**14.** Counsel also argues that, in fact, attorneys for Defendants were at fault for not abiding by a telephone conversation with Counsel, subsequently memorialized in a letter, in which Counsel explained that the counts were against Defendants in their individual capacities. Counsel asserts that he believed that conversation to clear up any ambiguity regarding the complaint and thus did not see any reason to amend the complaint until Defendants later moved to dismiss the complaint. At that point,

Counsel did move the trial court to amend the complaint to clarify the capacity issue. We feel that these actions taken by Counsel are irrelevant to the fact that the Third Amended Complaint, as filed, was completely ambiguous about the capacities in which Defendants were sued, and thus failed to comply with the court order.

**15.** Order of November 10, 1987, at 13.

**16.** Order and Opinion of March 31, 1988, at 6.

**17.** *See supra,* note 8.

regional legislators [18] to local legislators. *See, e.g., Baytree of Inverrary Realty Partners v. City of Lauderhill,* 873 F.2d 1407, 1409 (11th Cir.1989) (individual defendants have absolute immunity for conduct furthering legislative duties); *Espanola Way Corp. v. Meyerson,* 690 F.2d 827, 829 (11th Cir.1982) (legislative activity to which absolute immunity pertains includes the vote of a city councilperson), *cert. denied,* 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983); *Hernandez v. City of Lafayette,* 643 F.2d 1188, 1192–93 (5th Cir. Unit A May 1981) ("local legislators are entitled to absolute immunity from suit under § 1983 for conduct in the furtherance of their duties") (*cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *Universal Amusement Co., Inc. v. Hofheinz,* 616 F.2d 202, 205 (5th Cir.1980), *aff'd in pertinent part,* 646 F.2d 996 (1981) (absolute immunity for legislators in the furtherance of their duties; City Councilmembers cannot be held liable). This law is binding on the trial courts in this Circuit.

From the very first motion to dismiss made by Defendants, Defendants have protested that Counsel and Plaintiffs were attempting to hold Defendants liable for actions taken as local legislators on the Zoning Commission and the Town Council for which Defendants were immune under the law of this Circuit. In response to the first motion to dismiss, Counsel cursorily rejected the legislative immunity argument stating that "it is hardly a foregone conclusion ... that these individual Defendants are entitled to the legislative immunity afforded individuals performing legislative functions at the state or regional level [citing *Lake Country Estates* ]." Instead, Counsel noted that in the First Circuit, under *Cutting v. Muzzey,* 724 F.2d 259 (1st Cir. 1984), it was questionable whether the actions taken by Defendants were truly legislative. Nowhere did Counsel even acknowledge that clear precedent supporting Defendants' assertion of legislative immunity existed in this Circuit.

In opposing Defendants' motion to dismiss the Second Amended Complaint, Counsel mentioned in passing that, per *Espanola Way,* absolute legislative immunity in this Circuit turned on whether the local legislators were "engaging in legislative activity." 690 F.2d at 829. Counsel did not further research and discover, or at the very least neglected to note that this Circuit interprets "engaging in legislative activity" to mean "conduct in the furtherance of [the legislators'] duties," *Hernandez,* 643 F.2d at 1193, and that, as the trial court found, such activities as voting, debate and reacting to public opinion are manifestly in furtherance of legislative duties. Instead, Counsel discussed law in the Eighth Circuit [19] which suggested that enacting zoning may sometimes be an administrative rather than a legislative act. Counsel then turned to *Cutting* to find what he considered the definitive test of when a particular activity is legislative and entitled to absolute immunity.

The trial court in its November 10, 1987, order, while recognizing that *Cutting* did delineate a test for distinguishing between legislative and administrative acts, found that the court was bound to apply the test set out in *Hernandez* by the Fifth Circuit. The trial court therefore dismissed the Second Amended Complaint to the extent that Plaintiffs attempted to hold Defendants liable for legislative action. Yet Counsel, in opposing the later Motion for Sanctions based in part on the Second Amended Complaint, claimed that he, on behalf of Plaintiffs, had "proposed in good faith a variety of legal arguments which supported [Plaintiffs'] theory of individual liability," and that only in the November 10 order did the district court conclusively determine what law would govern the case.

Once sanctioned by the district court, Counsel moved for reconsideration of the sanction, contending that the fact patterns of this Circuit's legislative immunity cases did not correspond with the alleged facts of Plaintiffs' case and it was thus inappropri-

---

18. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979).

19. *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607, 611 n. 5 (8th Cir.1980).

ate to apply the standards set out in those cases. Further, Counsel for the first time argued for his right to propose adoption of a legal principle from another circuit even if the legal principle conflicts with the law of this Circuit. Counsel makes essentially the same argument to us on appeal, insisting that the position he has taken throughout is "warranted by existing law" of the First Circuit, satisfying the requirements of Rule 11.

We first of all oppose Counsel's construction of the phrase "existing law." It is the rare law that does not exist somewhere; usually completely novel theories of law arise only in areas of recent innovation or invention. Otherwise, the question is not whether the law exists, but whether it pertains in the jurisdiction in which the law is being asserted. Jurisdiction A might recognize the tort of "XYZ" which Jurisdiction B does not. A lawyer in B could not in good faith submit a complaint based on an XYZ cause of action asserting that XYZ is the existing law merely because XYZ is a legitimate cause of action in A. Instead, the lawyer would be required to inform the court that she recognized that XYZ was not yet a cognizable action in B but that she believed that the law of B should be extended, modified, or reversed to incorporate the tort of XYZ. Only then would the lawyer have satisfied her obligations under Rule 11.

We believe that Counsel had a duty to acknowledge at some point, not necessarily within the complaints filed, but certainly in one of the memoranda in opposition to Defendants' motions to dismiss the First and Second Amended Complaints, or in a similar document, that the binding precedent of this Circuit disfavored Plaintiffs' position on legislative immunity. Then Counsel could have in good faith requested the trial court to recognize the law expounded in *Cutting* because of the alleged factual distinctions between the cases decided in this Circuit and those of the instant case.[20] In-

stead, Counsel has consistently refused to acknowledge that this Court has rendered decisions on legislative immunity which are binding on his case, only conforming with our decisions when ordered to do so by the district court. His insistence on maintaining a legal stance untenable with our law demonstrates either an ignorance of our law, and thus inadequate research, or some intent to mislead the trial court as to the present state of this Circuit's precedent, and thus bad faith. Signing the complaint in either of the above situations is a violation of Rule 11 and warrants a sanction. Therefore, the district court did not err in ruling that Counsel should be liable for Rule 11 sanctions for insufficient legal research regarding legislative immunity in support of the Second Amended Complaint. Nor did the district court abuse its discretion in imposing a $1000 sanction, that amount being the approximate cost to the Defendants to respond to the pleading signed in violation of Rule 11.

Accordingly, the district court's order finding Counsel liable for Rule 11 sanctions is AFFIRMED.

---

**20.** We recognize that two of our sister circuits have rejected the position that we now take. *See Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90 (3d Cir.1988); *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531 (9th Cir.1986),

*reh. denied,* 809 F.2d 584 (1987) (differentiation between arguments warranted by existing law and arguments for extending, modifying or reversing existing law not required by Rule 11).