**TRANSAMERICA COMMERCIAL FINANCE CORPORATION, a/k/a BORG WARNER ACCEPTANCE CORPORATION, Plaintiff–Appellee,**

v.

**BANTON, INC., an Alabama corporation, BANTON INDUSTRIES, INC., a corporation, Defendants,**

**JAMES F. BANTON, an individual, Defendant–Appellant,**

**JANE J. LONG, an individual, Defendant,**

**SUSAN BANTON, an individual, Defendant–Third–Party Plaintiff–Appellant,**

**LEDBETTER, CORK & BETHUNE, an Alabama partnership, ALLEN T. LEDBETTER, an individual, DAVID C. CORK, an individual, JAMES J. BETHUNE, JR., an individual, CITATION CAROLINA CORPORATION, an Alabama corporation, NATIONAL BANK OF COMMERCE, N.A., a national banking association, Defendants,**

**T. MORRIS HACKNEY, Third–Party Defendant.**

No. 90–7676.

United States Court of Appeals, Eleventh Circuit.

Sept. 2, 1992.

Robert E. Sutton, Milwaukee, Wis., for defendant-appellant.

Richard K. Mauk, Carol Rasmussen, Birmingham, Ala., for Transamerica Commercial Finance Corp.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and HILL, Senior Circuit Judge.

TJOFLAT, Chief Judge:

Susan and James F. Banton appeal from an order of the United States District Court for the Northern District of Alabama imposing on them sanctions pursuant to Fed.R.Civ.P. 11 in the form of an order entering summary judgment against Susan Banton and default judgment against James Banton in the amount of $1,324,-167.45 plus interest, court costs, and attorneys' fees.

We reverse the district court's order imposing Rule 11 sanctions. After a brief rendition of the unique procedural history of this case, we turn to jurisdictional concerns. We then focus on the district court's order.

I.

After a financing agreement had gone sour, Transamerica Commercial Finance Corporation in 1988 brought an assortment of eleven contract, tort, and fraud claims against Susan and James Banton and nine other defendants in Alabama state court:

Banton, Inc.; Banton Industries, Inc.; Jane J. Long; Ledbetter, Cork & Bethune, an accounting firm; Allen T. Ledbetter; David C. Cork; James J. Bethune, Jr.; Citation Carolina Corporation, Inc.; and National Bank of Commerce, N.A. (NBC). Susan and James Banton are named in one count, which alleges that they failed to honor personal guaranties and owe plaintiff $2,999,824.03. James Banton appears in two additional counts, both of which accuse him and Jane Long of fraudulent misrepresentations. These fraud counts both ask for the imposition of unspecified compensatory and punitive damages against James Banton and Jane Long.

On February 2, 1990, Susan Banton removed the case to federal district court on diversity grounds pursuant to 28 U.S.C. §§ 1441(c) and 1332 (1988). On March 30, 1990, the district court granted Transamerica's application for a writ of pre-judgment attachment of Alabama real estate the Bantons had contracted to sell and ordered the magistrate judge to hold a hearing on April 9 to show cause why the writ of pre-judgment attachment should be dissolved. At the hearing, counsel for Susan Banton did not show cause for the dissolution of the writ, but reserved the right to do so upon motion at a later date. Accordingly, the magistrate judge recommended that the writ not be dissolved and permitted the parties to file written objections to its report within fifteen days. Failure to object within that time period would bar any party from challenging the magistrate judge's factual findings on appeal. Neither Susan nor James Banton objected to or appealed from the report.

One week later, on April 16, 1990, Transamerica moved for summary judgment against Susan Banton. After James Banton had failed to file an answer after being served by publication, Transamerica moved for default judgment against him on August 22, 1990. The affidavit in support of Transamerica's summary judgment motion against Susan Banton stated that Susan and James Banton "remain liable to Plaintiff, both jointly and severally, ... in the

amount of $1,324,167.45 plus Court costs, attorney fees and interest." In support of its motion for default judgment against James Banton, Transamerica submitted an affidavit identifying the same sum as "a sum certain or a sum which can by computation be made certain of the amount owed by the Defendant James F. Banton to the Plaintiff."

On or about August 20, 1990, the Bantons filed a suit under 42 U.S.C. § 1983 (1988) in Wisconsin state court, alleging that Transamerica under color of state law had conspired with others to violate the Bantons' constitutional rights by impressing their Alabama real estate with a pre-judgment lien. The Bantons sought, among other things, a preliminary injunction, presumably to enjoin the district court from attaching their property.[1] The Wisconsin court set a hearing on the application for preliminary injunction for August 27, 1990, at 1:30 p.m.

In response to the Bantons' initiation of the Wisconsin suit, Transamerica on August 24, a Friday, filed a "motion for injunctive relief, for protective order, for sanctions, and for expedited hearing on same" in the United States District Court for the Northern District of Alabama. In its motion, Transamerica alleged that the Bantons' Wisconsin suit "appears to be in the nature of a delaying tactic or action to circumvent the jurisdiction of the Circuit Court of Jefferson County, Alabama, and the U.S. District Court for the Northern District of Alabama, Southern Division." Transamerica asked the court to set its motion for a hearing "immediately" and, after that hearing, to enjoin the Bantons and their attorney "from proceeding with their lawsuit in the Circuit Court of Wisconsin until a final hearing is had on the merits of this entire cause before the Court," and to impose sanctions, including attorney's fees, "on the Bantons and their attorney for the attempt at trying to circumvent the proceeding currently pending before this Court and for causing damage to Transamerica," presumably in the form of "additional time, effort, and expense in

---

1. The record does not reveal what kind of in-    junction the Bantons sought.

defending" against the Bantons' Wisconsin suit.

District Judge William M. Acker, Jr., stepping in for Judge Seybourn H. Lynne, set a hearing on this motion for Monday, August 27, 1990, at 1:30 p.m., the exact same date and time of the hearing on the Bantons' motion for preliminary injunction in Wisconsin state court. When notified of the hearing on Friday, August 24, Robert B. Sutton, Susan Banton's Wisconsin attorney, explained that various scheduling conflicts prevented him from attending the hearing in Alabama on such short notice.

On Monday, Judge Acker conducted an eighteen-minute hearing on the motion without counsel for the Bantons. After counsel for Transamerica, Richard K. Mauk, mentioned that an application for default judgment against James Banton and one for summary judgment against Susan Banton were pending on Judge Lynne's September docket, the hearing ended in the following colloquy:

THE COURT: Well, I don't want to preempt or rule on a motion that Judge Lynn [sic] is aware of and for reasons that apparently were good enough for him he's already set.

MR. MAUK: Yes.

THE COURT: But it looks to me as though you're entitled to the relief you are asking of him. But that's between you and him. But you are entitled, as I see it, to the relief you are asking of me—

MR. MAUK: Yes, sir.

THE COURT: —today.

MR. MAUK: That is for injunction and sanctions, Judge.

THE COURT: Well, of course, sanctions, this gets back to the problem of stepping on Judge Lynn's [sic] toes, because the sanction that I would like to impose is the sanction of judgment.

MR. MAUK: I understand.

THE COURT: Now, do you want to wait for Judge Lynn [sic] to have Mr. Sutton come rushing in here when he finds out what's hit him? Or do you want to get the sanction that I think you are entitled to today: that is, a default judgment against both of them?

MR. MAUK: I would prefer a default judgment against both of them.

THE COURT: As a sanction?

MR. MAUK: Yes, sir.

THE COURT: Write it up. Write up what you are entitled to. You might not get it in the words that you write. You might find it edited to some degree. But I'm granting your motion for injunctive relief for protective order and for sanctions including default. But I'm reserving the right to look at what you have come up with to make sure that in my judgment it complies with the laws of due process and of what you are asking.

MR. MAUK: Yes, sir.

THE COURT: And I'd suggest that you beat it to your office and get that done so that [the Wisconsin judge] and Mr. Sutton can find out about it before the end of the day.

MR. MAUK: Yes, sir. I'd be glad to, Judge. Thank you very much.

THE COURT: All right.

Two hours later, at 3:54 p.m., Judge Acker entered an order granting Transamerica's motion in the following respects:

A. James F. Banton and Susan A. Banton, and their attorney, Robert E. Sutton, are hereby ENJOINED from proceeding with the prosecution of suit filed in the Circuit Court of Wisconsin, Case Number 90 CV 011088.

B. The severest sanction pursuant to Rule 11, F.R.Civ.P., against the said two defendants and their attorney is called for. Accordingly, the court hereby GRANTS the relief prayed for in the pending motion filed by plaintiff for default against James F. Banton and for summary judgment against Susan A. Banton, and hereby ENTERS judgment in the amount of $1,324,167.45 plus interest, court costs and attorney's fees in favor of plaintiff and against said two defendants....

This order renders MOOT the issues presented by the pending motion for summary judgment against defendant, Susan A. Banton, and the pending motion

for default against defendant, James F. Banton.

The record does not contain, and the district court's order does not refer to, a communication between Mauk and Judge Acker between the end of the hearing at 1:48 p.m. and the entry of the order two hours later.

On September 5, the Bantons moved to alter or amend the district court's judgment. Judge Lynne denied the motion a week later. The Bantons now appeal from the denial of their motion to alter or amend and invoke our jurisdiction to review a final judgment of the district court under 28 U.S.C. § 1291 (1988).

## II.

■ We begin our discussion of appellate jurisdiction with the observation that the district court's order did not constitute a final judgment under section 1291. At the time of the district court's order triggering this appeal, all eleven claims against all eleven defendants still were in place.[2] While Transamerica's motion for default judgment against James Banton consolidated all of its compensatory and punitive damage claims against this defendant by specifying "a sum certain or a sum which can by computation be made certain of the amount owed by the Defendant James F. Banton to the Plaintiff," several compensatory and punitive damage claims under contract, fraud, and negligence theories remained directed at other defendants. It is equally as clear that we do not have jurisdiction over this appeal under section 1292(a) as the Bantons do not challenge the injunction but the summary and default judgments against them.

■ We nevertheless have jurisdiction over this appeal under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988), the Supreme Court recently reiterated the three-prong test for the application of the collateral order doctrine: first, the order must "conclusively determine the disputed question"; second, it must "resolve an important issue completely separate from the merits of the action"; and third, it must be "effectively unreviewable on appeal from a final judgment." *Id.* at 276, 108 S.Ct. at 1136–37 (citations and internal quotations omitted).

■ We previously have held that an order imposing Rule 11 sanctions on an attorney of record satisfied all three requirements and therefore was immediately appealable under *Cohen. See DeSisto College, Inc. v. Line*, 888 F.2d 755, 763 (11th Cir.1989), *cert. denied*, 495 U.S. 952, 110 S.Ct. 2219, 109 L.Ed.2d 544 (1990). *DeSisto* leaves no doubt that the district court's order meets the first two *Cohen* prongs. The third prong deserves more attention as our decision in *DeSisto* relied in part on the fact that the sanction had been imposed on an attorney, a non-party, who " 'might not be able to obtain review from a final judgment.' " *Id.* at 762 (quoting *Robinson v. Tanner*, 798 F.2d 1378, 1381 (11th Cir. 1986), *cert. denied*, 481 U.S. 1039, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987)). Other circuits that have permitted immediate appeals from sanction orders[3] similarly have limited their holdings to non-parties on the same ground. *See, e.g., Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 539–40 (3d Cir.1985) (Rule 11 sanctions against attorney no longer on the case); *Frazier v. Cast*, 771 F.2d 259, 262 (7th Cir.1985) (Rule 11 sanctions against attorney of record); *Cheng v. GAF Corp.*, 713 F.2d 886, 890 (2d Cir.1983) (attorneys' fees under 28 U.S.C. § 1927 (1988)); *David*

---

**2.** David C. Cork, though listed on the November 29, 1990 district court docket sheet, does not appear as an appellant. Prior to this appeal, NBC was dismissed as defendant. Since then all defendants except Susan and James Banton have been dismissed upon motion by plaintiff Transamerica.

**3.** Some circuits even prohibit immediate appeals by non-parties. *See, e.g., G.J.B. & Assocs., Inc. v. Singleton*, 913 F.2d 824 (10th Cir.1990); *Click v. Abilene Nat'l Bank*, 822 F.2d 544 (5th Cir.1987); *In re Licht & Semonoff*, 796 F.2d 564 (1st Cir.1986).

*v. Hooker, Ltd.*, 560 F.2d 412, 417 (9th Cir.1977) (civil contempt).

In contrast, our predecessor circuit has held that an order imposing the sanction of default judgment on a party fell within *Cohen*'s purview. *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118 (5th Cir.), *cert. denied sub nom. Trefina, A.G. v. United States*, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970). *Diaz,* however, lacks persuasive force because it did not consider the question of non-reviewability.

Applying the Supreme Court's practical, not technical, approach to appellate jurisdiction, *see DeSisto College*, 888 F.2d at 762; *see also* 9 James W. Moore et al., Moore's Federal Practice ¶ 110.12 (2d ed. 1991), we look behind the distinction between parties and non-parties and focus on what motivated that distinction in the first place. The distinction between parties and non-parties serves no other purpose than to implement the third *Cohen* prong. In other words, an effectively unreviewable sanction order satisfies the third *Cohen* prong regardless of whether it imposes sanctions on a party or non-party.

The district court's order imposing sanctions on the Bantons in the form of summary and default judgments is effectively unreviewable on appeal from a final judgment and therefore immediately appealable under *Cohen.* The district court's order disposed of an ancillary proceeding regarding sanctions against the Bantons and their attorney for initiating the Wisconsin lawsuit. It is important to note that the court did not grant Transamerica's pending motions for summary judgment against Susan Banton and for default judgment against Charles Banton. It instead imposed summary and default judgments against the Bantons as the remedy requested by Transamerica in its motion for injunctive relief and sanctions in response to the filing of the Wisconsin suit.

In a highly unusual move, the court in effect fashioned the remedy requested by Transamerica in the ancillary proceeding regarding the Bantons' Wisconsin action to remove the Bantons from the underlying case. Its order specifically states that its disposition of the ancillary matter raised by Transamerica rendered moot the motions for summary judgment and for default judgment pending in the underlying suit against Susan and James Banton, respectively. These motions only could have become moot if the Bantons no longer were parties in the underlying lawsuit.

Having been severed from the underlying case against initially ten defendants, the Bantons could not have obtained appellate review of the district court's order. Their situation therefore resembles that of an attorney, who as a non-party may not be able to seek review of a sanction imposed on him or her upon appeal from a final judgment against all parties. There may be no appeal from a final judgment, because the remaining defendants may settle or may decide not to appeal. *See Frazier,* 771 F.2d at 262.

We again emphasize the unique circumstances of this case. In particular, we stress that this case differs from the many cases in which a sanction imposed upon a party, such as attorneys' fees and costs, does not effectively cut off the party from the underlying suit. It more closely resembles cases in which non-parties face the distinct possibility of never having a sanction order reviewed.

Considering the unusual facts of this case, we hold that our jurisdiction reaches the district court's sanctions order. We now turn to the merits.

### III.

■ The district court's action in this case stands as a glaring example of judicial overreaching. We do not wish to belabor this point as the quoted record excerpt and the fact summary above speak for themselves. We nevertheless feel compelled briefly to point out that the court had absolutely no authority *sua sponte,* without notice, and outside the presence of the Bantons or their attorneys, to impose the severest of all Rule 11 sanctions for actions the Bantons or their attorneys might have

taken in another court.[4] *See Schoenberger v. Oselka*, 909 F.2d 1086 (7th Cir.1990).

REVERSED.

---

**4.** Needless to say, we express no opinion about the merits of a motion for sanctions based on conduct in the district court and adjudicated in a proper proceeding.