**MANNHEIM VIDEO, INC., an Illinois corporation, Plaintiff–Appellant, Cross–Appellee,**

v.

**COUNTY OF COOK, a body politic and corporate, Defendant–Appellee, Cross–Appellant.**

Nos. 88–3511, 89–1060.

United States Court of Appeals, Seventh Circuit.

Argued June 12, 1989.

Decided Sept. 20, 1989.

Rehearing Denied Nov. 14, 1989.

Michael Null, Reed Lee, Adam Bourgeois, Chicago, Ill., for Mannheim Video, Inc., an Illinois Corp., plaintiff-appellant, cross-appellee.

Madeleine S. Murphy, Asst. State Atty., Office of the State's Atty. of Cook County, Chicago, Ill., for County of Cook, a Body Politic and Corporate, defendant-appellee, cross-appellant.

Before BAUER, Chief Judge, and CUMMINGS and FLAUM, Circuit Judges.

CUMMINGS, Circuit Judge.

Mannheim Video, Inc. appeals the decision of the district court to dismiss its lawsuit *sua sponte* in favor of a parallel state court action. The defendant County of Cook cross-appeals the district court's decision not to impose sanctions under Rule 11 of the Federal Rules of Civil Procedure. We affirm the district court's decisions in both respects.

I. Procedural History

Mannheim Video ("Mannheim") operates a video arcade and gift shop within Cook County, Illinois. A portion, less than half, of Mannheim's business is comprised of sexually explicit materials, including books, magazines and novelties. The Mannheim video arcade houses individual, coin-operated booths, which feature sexually explicit selections.

Mannheim initiated this lawsuit challenging the constitutionality of Cook County's zoning ordinance, Adult Use Provisions of the County's Zoning Ordinance, C.B. No. 107756 (1981). The zoning ordinance regulates establishments "having as a substan-

tial or significant portion of its stock" materials that are sexually explicit in nature. The ordinance also includes particularized regulations for "adult mini motion picture theatres." Mannheim's three-count complaint sought declaratory and injunctive relief and alleged that: (1) the term "substantial or significant portion of its stock" is unconstitutionally vague; (2) its video viewing booths are not theatres within the definition of the zoning ordinance; and (3) the zoning ordinance otherwise impermissibly infringes upon Mannheim's First Amendment rights.

When Mannheim filed this suit in May 1988, it was already defending a state action brought by the County in April 1987. The state action alleged various infractions of the County's building ordinances. The state action did not allege any violations of the adult use zoning ordinance, presumably because *County of Cook v. Renaissance Arcade and Bookstore,* 122 Ill.2d 123, 118 Ill.Dec. 618, 522 N.E.2d 73 (1988), in which the Illinois Supreme Court upheld the constitutionality of certain parts of the adult use zoning ordinance, was then pending on appeal in the United States Supreme Court.

Cook County responded to Mannheim's complaint by moving to dismiss each of the three counts contained in the complaint for failing to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Judge Marshall dismissed the second count, finding that Mannheim's video booths fell squarely within the ordinance's definition of a mini theatre. He stayed the third count pending the Supreme Court's disposition of *Renaissance Arcade.* Finally, Judge Marshall held that the first count stated a valid claim under *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and he refused to dismiss that claim. Thus all that remained of Mannheim's suit was a single count alleging that the term "substantial and significant portion" was unconstitutionally vague.

On October 11, 1988, the Supreme Court summarily dismissed the appeal in *Renaissance Arcade,* sub nom. *Mannheim Books v. County of Cook,* —— U.S. ——, 109 S.Ct. 209, 102 L.Ed.2d 201.[1] On October 27, 1988, the County amended its state court complaint against Mannheim, this time including allegations of violations of the adult use zoning ordinance. Besides answering the amended state court complaint and asserting a counterclaim similar to its complaint here, Mannheim moved the district court to enjoin the County from prosecuting the alleged violations of the adult use zoning ordinance in state court, and instead to compel the County to continue to contest the ordinance's validity in federal court. Upon learning that the state action now essentially included the same claim as that being asserted in federal court, Judge Marshall dismissed the federal action in favor of the state action, citing *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

## II. *Younger* Abstention

In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, the Supreme Court held generally that principles of equity, comity and federalism require a federal court to abstain from hearing a federal action challenging the constitutionality of a state criminal statute while the state is prosecuting the federal plaintiff in state court for violating that same statute. *Id.* at 43–44, 91 S.Ct. at 750. *Younger,* which involved a state criminal prosecution, has been applied to quasi-criminal actions as well. *Ciotti v. County of Cook,* 712 F.2d 312, 313 (7th Cir.1983); see also *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

■ When the state proceedings follow the initiation of the federal action the district court should look to two factors before deciding whether to abstain. First,

---

1. Mannheim Books bears no relation to the plaintiff in this case. The dismissal in *Mannheim Books* automatically resulted in the dismissal of the third count in the present complaint which had been stayed until then.

the court should consider whether the federal plaintiff will have an adequate opportunity to raise its constitutional challenges in the state proceedings. *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Abstention certainly accomplishes nothing if the federal plaintiff cannot even raise its federal constitutional challenges in the state proceeding; it merely delays the inevitable federal action following the state proceeding and postpones the possible vindication of the federal plaintiff's constitutional rights. Second, the district judge must consider the progress of the federal action. The federal action should be dismissed in favor of the state action if there have been no "proceedings on the merits ... in the federal court." *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); see also *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984); *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 929, 95 S.Ct. 2561, 2566, 45 L.Ed.2d 648 (1975) (abstention appropriate when federal action still in an embryonic stage); *Ciotti v. County of Cook,* 712 F.2d at 313–314; *State of Illinois v. General Electric Co.,* 683 F.2d 206, 212 (7th Cir.1982).

■ Neither party contends that Mannheim would not have the opportunity to raise its constitutional challenges in the state action, so that only the second criterion under *Younger* is in dispute.[2] Mannheim argues that its federal action had progressed beyond an embryonic stage, see *Doran, supra,* and that substantial findings on the merits of its constitutional claim had been reached. We disagree.

Mannheim's contention is put to rest by this Court's previous decision in *Ciotti,* as Judge Marshall recognized. In *Ciotti* too, a bookstore challenged the constitutionality of the Cook County adult use zoning ordinance. The County unsuccessfully moved to dismiss the case for want of a case or controversy, specifically arguing that the plaintiff lacked standing. The County then filed an action against the federal plaintiff in state court alleging violations of the ordinance. This Court affirmed the district judge's decision in that case to dismiss the federal action under *Younger* abstention grounds, noting that:

> The district court's decision that plaintiffs presented a case or controversy went to the issue of plaintiffs' standing, but it was not a decision relating to the merits of the underlying issue in the case—the constitutionality of the ordinance.

*Ciotti,* 712 F.2d at 314. Here too the merits of Mannheim's first count had not yet been decided.

■ Reasoning analogous to *Ciotti* applies to this case. Mannheim, however, contends that Judge Marshall's consideration of the County's motion to dismiss somehow "reached the merits of Mannheim's constitutional claims" (Br. 12). The federal action had yet to consider anything approaching the merits. All Judge Marshall decided was that the third count was directly dependent upon the Supreme Court's disposition of the *Renaissance* appeal, that the second count was too insubstantial to merit trial,[3] and that the first count—the only viable count at the time of dismissal—merely satisfied the liberal stan-

---

2. Of course following an adverse decision in state court relating to its federal constitutional challenge, Mannheim could seek review in the Supreme Court of the United States.

3. Mannheim argues that Judge Marshall's rejection of its second count compelled him to retain and decide the remaining first count. This argument fails. A federal plaintiff cannot defeat abstention by tacking onto its complaint an insubstantial count (like the second count) that falls out well before trial. Judge Marshall's complete analysis of Mannheim's second count was simply:

> In Count II of its complaint, plaintiff claims that its individual viewing booths are not "the-

atres" as defined by the ordinance. This claim lacks merit. Plaintiff's booths fall squarely within the plain language of the definition of "adult mini motion picture theatres." Defendant's motion to dismiss is granted as to Count II.

When deciding on abstention, a federal court should not look simply at what issues are no longer a part of the case, but also what issues are left to decide and the progress of the court in deciding the remaining issues. Here only the first count remained and it was still in an early stage.

dards of a complaint under Rule 12(b)(6). As for the only remaining viable issue, Judge Marshall's determination not to dismiss the first count merely meant the County was unable to show "beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102.[4]

As in *Ciotti*, apart from the district court's decision on the County's motion to dismiss the second count, "the record indicates no other proceedings—for instance, depositions taken, discovery completed, or briefs filed on the issues—that would suggest advancement toward a determination on the merits. The federal proceeding was still in an embryonic stage." *Ciotti*, 712 F.2d at 314; see also citations therein.

### III. Motion For Sanctions

The County also appeals Judge Marshall's refusal to award the County attorneys' fees as sanctions under Rule 11. The County argues that on two occasions attorneys Michael Null and Adam Bourgeois, counsel for Mannheim, failed to cite a relevant case which was adverse to their position. In both of the cases which Mannheim failed to cite, one or both of its present counsel were listed as attorneys of record. The County urges reversal based upon Judge Marshall's failure to engage in a thorough analysis as well as his ultimate decision not to impose sanctions.

In the first count of its complaint, Mannheim claimed that the term "substantial portion" as used in the ordinance can only be constitutionally interpreted to mean more than fifty percent. Later, in response to the County's motion to dismiss, Mannheim cited favorable state cases from Washington and California and federal district cases from Colorado and Michigan, but stated that "the precise constitutional question raised in the challenge presented

here has not been squarely addressed by the Court" (R. Item 1 at 4). Mannheim's counsel failed to note that they had litigated and lost that exact issue in state court in *City of Chicago v. Scandia Books*, 102 Ill.App.3d 292, 58 Ill.Dec. 72, 430 N.E.2d 14 (1st Dist.1981).

The second omission occurred when Mannheim filed its motion for a restraining order to enjoin the County from prosecuting the state action. Mannheim's accompanying memorandum of law failed to address or mention *Ciotti*, although one of Mannheim's attorneys of record at the time represented the plaintiff in *Ciotti*.

Judge Marshall felt that neither omission merited sanctions, and this Court reviews such decisions under a deferential standard. See *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir.1989) (en banc). "[B]ecause the trial court alone has an intimate familiarity with the relevant proceedings, its decision whether counsel has conducted the kind of inquiry required by Rule 11 and taken a position reasonable in light of the facts and governing law is reversible only where there has been an abuse of discretion." *R.K. Harp Investment Corp. v. McQuade*, 825 F.2d 1101, 1103 (7th Cir.1987).

We decline to hold that Judge Marshall's decision to forgo developing lengthy findings and pronounced analysis regarding attorneys' fees as sanctions was an abuse of discretion. In *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1084 (7th Cir.1987), this Court observed that a "serious Rule 11 motion is not a gnat to be brushed off with the back of the hand," and reversed the district court for failing to articulate any reasons for denying a motion for sanctions which was at least facially meritorious. But in that same case, we declined to adopt the requirement that district judges "make findings and give explanations every time a party seeks sanctions

---

**4.** The motion in *Ciotti* resembles the motion here to dismiss for failure to state a claim upon which relief can be granted. Although Mannheim seeks to distinguish the former as an issue of standing and the latter as touching upon the merits, both motions demand that the court determine whether a live case exists, a controversy that the judiciary can remedy. In *Ciotti*, the district court's analysis was limited to whether that plaintiff was a proper party to prosecute the suit. Here, Judge Marshall only determined whether a possible case with a legal remedy existed. Neither analysis casts any light or carries *res judicata* effects on the merits of a cognizable claim, here the first count.

under Rule 11." *Id.* Rule 11 was designed in large part to curtail needless litigation and to uncork bottlenecks in the district courts. Requiring district judges to engage in time-consuming procedures every time a Rule 11 motion is made would create a cure that is as bad as the disease. On the record before us, the circumstances surrounding the County's motion are not so egregious as in *Szabo* that Judge Marshall's curt denial of the motion amounted to an abuse of discretion.

Although we decline to hold that Judge Marshall abused his discretion, this should in no way be interpreted as condoning the conduct of Mannheim's counsel. They argue that under our adversary system they are not required to make the County's argument. That may well be true, but the "ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless." *Hill v. Norfolk and Western Ry.*, 814 F.2d 1192, 1198 (7th Cir.1987), citing *Bonds v. Coca–Cola Co.*, 806 F.2d 1324, 1328 (7th Cir. 1986). Mannheim's counsel argues that *Scandia* is not dispositive because it was an intermediate state court case interpreting a federal constitutional law, and therefore at best only persuasive in federal district court. That position is technically correct, but this argument is an exercise in gall when presented by the same attorney who argued in briefs that the district court should rule in his client's favor based upon intermediate California and Washington state court decisions, as well as decisions of federal district courts from outside this Circuit. And counsel's failure to cite *Ciotti* in his motion for a restraining order is also a poor example of an attorney conforming to his duties as an officer of the court. Mannheim's counsel argues that he believes that *Ciotti* is not controlling. Aside from his being wrong, *Hill* and *Bonds* made clear that an attorney should not ignore potentially dispositive authorities; the word "potentially" deliberately included those cases arguably dispositive. Counsel is certainly under obligation to cite adverse cases which are ostensibly controlling and then may argue their merits or inapplicability. But counsel may not hide from virtually controlling cases, only later to argue that the omission was due to a scintilla of difference between the already decided cases and the one being litigated.

Since our review in this area is not *de novo*, the County had the burden of showing that Judge Marshall, who had a firsthand account of the events and was familiar with the surrounding context, abused his discretion by declining to impose sanctions. Regardless of our own displeasure with plaintiffs' counsel, the County failed to carry this burden.

## IV. Conclusion

The district court was compelled to abstain from conducting further proceedings in light of *Younger*. Judge Marshall correctly dismissed the action, still in the embryonic stage of development, in favor of the parallel state proceeding. That state proceeding will afford Mannheim an adequate opportunity to press its federal constitutional claims, as well as preserve any possible appeal to a federal forum, if necessary. Furthermore, it has not been demonstrated that Judge Marshall's decision to decline sanctioning Mannheim under Rule 11 was an abuse of discretion.

The decisions of the district court are affirmed.