Anthony Wayne THOMPSON, Plaintiff,

v.

Cheryl L. DUKE, Chester J. Pucci,
Floyd Cox, et al.,
Defendants–Appellees.

Appeal of Philip J. NATHANSON,
Attorney for Plaintiff.

No. 90–1811.

United States Court of Appeals,
Seventh Circuit.

Argued April 18, 1991.

Decided Aug. 2, 1991.

Shepard Gould, Peter D. Kasdin, Mary E. Doherty, Nathanson & Wray, and Philip J. Nathanson (argued), Nathanson & Associates, Chicago, Ill., for plaintiff.

Rosalyn B. Kaplan, Asst. Atty. Gen., Colleen McLaughlin, Michael V. Casey, Asst. Atty. Gen., Joseph D. Ryan, Frank J. Parkerson, Philip H. Mitchell, Asst. State Attys., David R. Butzen (argued), Chicago, Ill., for defendants-appellees.

Before WOOD, Jr., CUDAHY, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

An attorney brought an action, on behalf of his client, against various state and county officials pursuant to 42 U.S.C. § 1983. The district court granted the defendants' motions for summary judgment, and we affirmed. Thereafter, the district court sanctioned the attorney under Rule 11 on the ground that the allegations in the complaint against the county defendants were not warranted by existing law or a good faith argument for reversing, modifying, or extending existing law. For the following reasons, we reverse the imposition of sanctions by the district court.

I

BACKGROUND

A. *Facts*

Philip J. Nathanson filed a civil rights action on behalf of his client, Anthony Wayne Thompson. The facts and disposition of that case are presented in *Thompson v. Duke*, 882 F.2d 1180 (7th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2167, 109 L.Ed.2d 496 (1990). We assume familiarity with that opinion and will present only those facts that concern this appeal.

On July 29, 1982, Mr. Thompson, a parolee, was arrested on a burglary charge and incarcerated in Cook County Jail. After his arrest, officials of the Illinois Department of Corrections (IDOC) issued a parole violation warrant because Mr. Thompson allegedly had violated the terms of his parole by committing a felony. On September 20, 1982, Mr. Thompson was tried before a state court judge and acquitted of the burglary charge. Mr. Thompson was returned to custody, however, pending a parole revocation hearing scheduled for the following day. For unknown reasons, the hearing was not held. Four days after his trial, Mr. Thompson was injured seriously in a fight with another inmate. On October 18, 1982, the parole administrator withdrew the parole violation warrant. Unaware of this event, the IDOC held a parole revocation hearing the following day. The hearing officer determined that no probable cause existed to believe that Mr. Thompson had violated the terms of his parole, and he was released.

Based on these events, Mr. Nathanson, on behalf of Mr. Thompson, filed a civil

rights action pursuant to 42 U.S.C. § 1983. He named as defendants various county and state officials. For purposes of this appeal, we focus on the allegations aimed at the Executive Director and the Superintendent of the Cook County Jail (county jail officials).[1] Mr. Nathanson's complaint contended, *inter alia,* that the county jail officials deprived him of liberty without due process by maintaining a policy of incarcerating parolees without making an independent determination as to the validity of that incarceration even after a parolee has been acquitted of the underlying criminal charge that triggered the issuance of a parole violation warrant.

The district court granted the state defendants' and the county defendants' motions for summary judgment against Mr. Thompson. Regarding the county jail officials, the court held that, under *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), they had no duty to investigate independently claims of innocence and did not violate Mr. Thompson's rights because they relied upon a facially valid parole violation warrant. *See* 882 F.2d at 1182. Mr. Thompson appealed both summary judgments. While the appeal was pending before this court, the county defendants moved for $30,000 in attorney's fees as a sanction pursuant to Rule 11 and 42 U.S.C. § 1988. The county defendants argued that the complaint signed by Mr. Nathanson was not well grounded in fact and was not warranted by existing law or any good faith argument for the modification or reversal of existing law. Subsequently, we affirmed the district court's summary judgment for the state and county defendants. Concerning the county jail officials, we noted that, under *McCollan* and Illinois statutory law, their only duty was to ascertain the facial validity of the parole violation warrant and further held that they had no duty to investigate independently Mr. Thompson's claim of innocence. 882 F.2d at 1186–87. We did not accept Mr. Thompson's argument that *McCollan* did not apply because it involved

pretrial detention of an innocent person, rather than post-trial detention of an acquitted person. *Id.* at 1186 n. 7. Finally, we concluded that, because the standards of proof were different for a criminal trial and a parole revocation hearing, Mr. Thompson's acquittal did not remove automatically all factual support for the warrant. *Id.* at 1186–87.

### B. *District Court's Sanction Order*

Following our affirmance of the summary judgment, the district court granted the county defendants' motion for sanctions under Rule 11. The court based its decision solely on Rule 11 because it believed that the suit probably did not meet the exacting requirements for sanctions under 42 U.S.C. § 1988. The court agreed with the county defendants that "the *complaint* was not supported by existing law nor any reasonable argument for modification of existing law." Mem. Op. at 2 (emphasis supplied). The court was of the opinion that, in opposing the motion, Mr. Nathanson did not argue that the allegations in his complaint were supported by existing law. Rather, he suggested that the allegations were based on an argument for modifying existing law. The court reasoned, however, that *McCollan,* decided five years before Mr. Nathanson filed the complaint, clearly established that the county jail officials "had no duty to investigate the facts underlying plaintiff's commitment to their custody" or "to monitor the parole revocation proceedings." *Id.* The court further remarked that Mr. Nathanson presented no reasonable argument for the modification of the law under *McCollan,* nor did he couch his argument in terms of a modification. Therefore, the court imposed a $15,000 sanction. While it determined that the requested $30,000 would be justified in this case, it was reluctant to impose such a sizable financial burden on Mr. Nathanson, who was apparently a sole practitioner or a member of a small firm. Nevertheless, the court believed that

---

1. The county defendants in this case included other officials besides those we have designated "county jail officials," but the district court's rationale for imposing sanctions on Mr. Nathanson focused on the allegations against the county jail officials.

a substantial sanction was necessary to deter future frivolous filings by Mr. Nathanson. Mr. Nathanson filed a timely notice of appeal.

## II

## ANALYSIS

A. *Guiding Principles*

1.

We review an imposition of a Rule 11 sanction under an abuse of discretion standard. *See Cooter & Gell v. Hartmarx Corp.,* — U.S. ——, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990); *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 933 (7th Cir.1989) (en banc). Nevertheless, as our decision en banc in *Mars Steel* recognized:

Review under the abuse of discretion standard does not mean no appellate review. Rule 11 sanctions have significant impact beyond the merits of the individual case. Concerns for the effect on both an attorney's reputation and for the vigor and creativity of advocacy by other members of the bar necessarily require that we exercise less than total deference to the district court in its decision to impose Rule 11 sanctions. As we have stated: "Despite the increased license to impose sanctions, judges should always reflect seriously upon the nuances of the particular case, and the implications the case has on the nature of the legal representation, before imposing sanctions."

880 F.2d at 936 (quoting *In re Ronco, Inc.,* 838 F.2d 212, 217–18 (7th Cir.1988) (quoting *Brown v. National Bd. of Medical Examiners,* 800 F.2d 168, 173 (7th Cir.1986))). "In reviewing the imposition of sanctions under Rule 11, then, we will give deference to the decision of the district court, but with careful reference to the standards governing the exercise of the court's discretion and to the purpose Rule 11 is meant to serve." *Kraemer v. Grant County,* 892 F.2d 686, 689 (7th Cir.1990).

2.

Rule 11 requires an attorney or party to sign every paper presented to the district court. That signature

constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose....

Fed.R.Civ.P. 11. If a paper is signed in violation of Rule 11, the court is required to impose an appropriate sanction. The district court employs an objectively reasonable standard in accessing whether an attorney's conduct violates the Rule. *See Schaefer v. Transportation Media Inc.,* 859 F.2d 1251, 1256 (7th Cir.1988). In *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1080 (7th Cir.1987), Judge Easterbrook set forth four criteria or "strands" embodied in Rule 11:

The Rule contains several strands. There must be "reasonable inquiry" into both fact and law; there must be good faith (that is, the paper may not be interposed "to harass"); the legal theory must be objectively "warranted by existing law or a good faith argument" for the modification of existing law; and the lawyer must believe that the complaint is "well grounded in fact". The attorney filing the complaint or other paper must satisfy all four requirements.

In *Szabo,* Judge Easterbrook also pointed out that Rule 11 does not require "scholarly exposition or exhaustive research," *id.* at 1081, and that "a court must take care not to penalize arguments for legal evolution." *Id.* at 1082. This guidance is especially important in civil rights litigation, which often requires innovative arguments and involves unpopular plaintiffs to a degree greater than other cases. "Rule 11 cannot be allowed to thoroughly undermine zealous advocacy. 'The rule is not intended to chill an attorney's enthusi-

asm or creativity in pursuing factual or legal theories.' This is especially so in civil rights cases involving unpopular clients." *Kraemer*, 892 F.2d at 690 (quoting Advisory Committee Notes to 1983 Amendments to Fed.R.Civ.P. 11).

## B. *Application of the Principles*

■ With these principles in mind, we turn to the merits of this appeal. The district court focused on the "third strand" of Rule 11. Thus, this case requires us to determine whether the allegations contained in the complaint against the county jail officials signed by Mr. Nathanson were warranted by existing law or constituted a good faith argument for modification or extension of existing law.

### 1.

Mr. Nathanson maintains that the theory of recovery set forth in his complaint was not contrary to existing law. In his view, *McCollan* involved a narrow holding based on specific facts that are materially different from Mr. Thompson's case. *McCollan*, he submits, did not address and therefore does not control Mr. Thompson's case.[2] In response, the county defendants contend that *McCollan* was so clear that no reasonable attorney would have argued that the county jail officials had a duty to investigate the validity of the parole violation warrant or release Mr. Thompson after he was acquitted.

Because both parties agree that the scope of *McCollan* is central to a determination of this appeal, we begin with an analysis of that opinion. In *McCollan*, the plaintiff's brother obtained a duplicate of the plaintiff's driver's license and placed the brother's picture on it. The brother was subsequently arrested, booked in the plaintiff's name, and released on bond. The sheriff then issued an arrest warrant intended for the brother but issued in the plaintiff's name. Pursuant to the warrant, the plaintiff was arrested, placed into custody, and detained for three days until the sheriff learned of the mistake. The plaintiff brought a section 1983 action against the sheriff for deprivation of his liberty without due process based on the sheriff's failure to institute identification procedures that would have revealed the error. *See McCollan*, 443 U.S. at 140–42, 99 S.Ct. at 2692–94. The Supreme Court held that the plaintiff was not deprived of any constitutional right because the arrest warrant was in accord with fourth amendment requirements. "[A] person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." *Id.* at 143, 99 S.Ct. at 2694.

The county defendants invite our attention to the Court's statement that:

Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense

---

**2.** The district court noted that in opposing the motion for sanctions, "Mr. Nathanson does not attempt to argue that the allegations of the complaint were supported by existing law." Mem. Op. at 1. Yet Mr. Nathanson's memorandum in opposition to the county defendants' motion for sanctions does make such an argument. "The main thrust of the County defendants Rule 11 motion is that the complaint was not warranted by existing law. . . . But even though this position was accepted by this Court, it is another matter indeed whether plaintiff's arguments lacked a basis in existing law or did not amount to a good faith argument for extending existing law." R. 135 at 5. Thus, we believe Mr. Nathanson pressed before the district court that the allegations in the complaint were warranted

by existing law *and* were also based on a good faith argument for extending or modifying existing law. We therefore need not confront the issue of whether counsel must differentiate between arguments warranted by existing law and arguments for extending, modifying, or reversing existing law. *Compare DeSisto College, Inc. v. Line*, 888 F.2d 755, 766 (11th Cir.1989) (counsel must acknowledge binding precedent and request modification), *cert. denied,* — U.S. ——, 110 S.Ct. 2219, 109 L.Ed.2d 544 (1990) *with Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 96 (3d Cir.1988) *and Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1540 (9th Cir.1986) (rejecting the obligation of counsel to so label arguments).

such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

*Id.* at 145–46, 99 S.Ct. at 2695 (footnote omitted). The county defendants contend that *McCollan* foreclosed the allegations made by Mr. Nathanson against the county jail officials because the parole violation warrant was valid in this case, and like the sheriff in *McCollan,* the county jail officials had no duty to ascertain independently the propriety of Mr. Thompson's incarceration.

Our decision affirming the district court's summary judgment recognized that the county defendants were correct in their submission that *McCollan's* reasoning barred Mr. Thompson from recovering against the county jail defendants. *See Thompson v. Duke,* 882 F.2d 1180, 1185–86 & n. 7 (7th Cir.1989). However, neither our nor the district court's eventual disposition of the case controls our review of Rule 11 sanctions here. Rule 11 focuses on an attorney's conduct rather than on the resolution of a case. *See Mars Steel,* 880 F.2d at 933. Thus, we must determine whether, when Mr. Nathanson filed the complaint, the factual differences between this case and *McCollan* permitted a reasonable lawyer to conclude that the rationale of *McCollan* did not control the situation.

After examining the complaint in this case, we believe that it presented a factual scenario and a litigation theory sufficiently different from *McCollan* to warrant the conclusion that Rule 11 sanctions are not warranted. The *factual* differences between the two cases readily are apparent. As we already have noted, *McCollan* involved a three-day pretrial detention pursuant to an arrest warrant. By contrast, Mr. Thompson's case involved more than a detention over a three-day period. He was held in *post*-trial custody from September 20, 1982 to October 19, 1982. Mr. Thompson was arrested pursuant to a parole violation warrant and remained incarcerated after a full trial and acquittal on the charges that triggered the issuance of the warrant. Furthermore, the parole revocation hearing was canceled and not held until almost a month after his acquittal. These events, absent in *McCollan,* added weight to Mr. Nathanson's allegations that the county jail officials should have known that Mr. Thompson was incarcerated without cause, or at least investigated the situation. Furthermore, the *rationale* employed in *McCollan* rested on the plaintiff's short pretrial detention pursuant to an arrest warrant. *See, e.g.,* 443 U.S. at 143–46, 99 S.Ct. at 2694–96. Indeed, the Supreme Court emphasized the facts of the case, and its decision was by no means categorical. The Court commented, "[o]bviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment." *Id.* at 144, 99 S.Ct. at 2694. The Court continued, "mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty ... without due process of law.' But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation." *Id.* at 145, 99 S.Ct. at 2695. Accordingly, we must conclude that, at the time the complaint was filed in this action, there were sufficient factual and theoretical differences to permit Mr. Nathanson to take the position that *McCollan* was not controlling. In reaching this conclusion, we note that, when Mr. Nathanson made these arguments to this court on direct appeal, the merits panel responded not with a sanction order but with a thorough, reasoned, published opinion.

2.

Mr. Nathanson's position on behalf of Mr. Thompson was challenged by the county defendants in their motion for summary judgment. As we already have noted, they argued that *McCollan* was controlling. In his response, Mr. Nathanson chose to ig-

nore this criticism rather than meet it frontally. Indeed, as he admitted at oral argument, his response to the motion for summary judgment did not cite *McCollan*. This tactic was undoubtedly poor advocacy, but, under the circumstances here, we do not believe that it can support the imposition of sanctions under Rule 11. "The failure to cite relevant authority, whether it be case law or statutory provisions, does not alone justify the imposition of sanctions." *United States v. Stringfellow*, 911 F.2d 225, 226 (9th Cir.1990); *cf. Wojan v. General Motors Corp.*, 851 F.2d 969, 976 (7th Cir.1988) (failure to cite case demonstrated lack of candor but was not sanctionable). When a complaint is filed seeking the alteration or modification of existing law, the complaint itself " 'need not and should not contain citations to legal argument.' " *Smith v. National Health Care Servs.*, 934 F.2d 95, 97 (7th Cir.1991) (quoting *Szabo*, 823 F.2d at 1082). "[I]n order to determine whether the complaint is an effort to change law rather than a refusal to acknowledge adverse precedent, a court must examine later arguments by counsel in support of the complaint." *Id.* Counsel must "grapple with the established law of the Supreme Court and of this Circuit." *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 205 (7th Cir.1985); *see also Szabo*, 823 F.2d at 1082. Here, however, Mr. Nathanson's position was, at least in part, not that he was arguing for a change in the law but rather that his complaint was compatible with current legal standards. There was a principled basis for that argument. It was not foreclosed by the precedent of the Supreme Court or of this circuit.[3] His failure to reply to the position of the county defendants that *McCollan* applied did not mislead the court. It had been made aware of the case by the county defendants. Not addressing the issue apparently was Mr. Nathanson's way of demonstrating its inapplicability. While the omission of a citation

of *controlling* authority would make an argument frivolous and therefore sanctionable, *see Stringfellow*, 911 F.2d at 226, the omission of a citation that arguably does not control, while imprudent and unprofessional,[4] is not, standing alone, a basis for sanctions. Here, Mr. Nathanson's argument in reply to the county defendants' motion for summary judgment—while vague and inept—is compatible with the theory of his complaint that a post-disposition delay of the length visited on Mr. Thompson violated the due process clause because it was the product of a systemic failure for which the county jail officials had responsibility. This was not the issue presented to the Supreme Court in *McCollan*, and Mr. Nathanson was entitled to make it to the district court.

### Conclusion

For the foregoing reasons, we reverse the imposition of sanctions by the district court.

REVERSED.

HARLINGTON WOOD, Jr., Circuit Judge, dissenting.

Judge Ripple's opinion for the majority so fully discusses the issues that there is little to say in dissent except I disagree with the result. The majority provides better excuses for Mr. Nathanson's actions than he did for himself. I believe Judge Grady's view to be more realistic. I would therefore support Judge Grady's imposition of sanctions except I believe $15,000 is still too high. Judge Grady had already cut the sanctions in half from $30,000, but for the same reasons he gave I believe a sanction of $5,000 to be quite adequate.

Therefore I respectfully dissent.

---

3. *Cf. DeSisto College, Inc. v. Line*, 888 F.2d 755, 766 (11th Cir.1989) (counsel must acknowledge the binding precedent of the circuit), *cert. denied,* — U.S. ——, 110 S.Ct. 2219, 109 L.Ed.2d 544 (1990).

4. *See Mannheim Video v. County of Cook*, 884 F.2d 1043, 1047 (7th Cir.1989) (failure to cite

*potentially* dispositive authority " 'is as unprofessional as it is pointless' ") (quoting *Hill v. Norfolk & W. Ry.*, 814 F.2d 1192, 1198 (7th Cir. 1987)), *cert. denied,* — U.S. ——, 110 S.Ct. 2561, 109 L.Ed.2d 744 (1990). *See generally Bonds v. Coca–Cola Co.*, 806 F.2d 1324, 1329 (7th Cir. 1986).