A–ABART ELECTRIC SUPPLY,
INCORPORATED, Plaintiff–
Appellant,

v.

EMERSON ELECTRIC COMPANY and
Littman Brothers Energy Supplies, In-
corporated, Defendants–Appellees.

Nos. 90–3751, 91–2221.

United States Court of Appeals,
Seventh Circuit.

Argued May 8, 1991.

Decided Feb. 27, 1992.

Rehearing Denied April 23, 1992.

Bernard M. Kaplan (argued), Norman S. Rosen, John W. Boyles, Ruben, Kaplan & Rosen, Skokie, Ill., for A–Abart Elec. Supply, Inc.

Laurence H. Levine, Robert L. Stout, Jr. (argued), Douglas A. Freedman, William J.

Gibbons, James F. Stern, Latham & Watkins, Chicago, Ill., for Emerson Elec. Co.

Andrew B. David (argued), William J. Gigler, Sugar, Friedberg & Felsenthal, Chicago, Ill., for Littman Bros. Energy Supplies, Inc.

Before WOOD, Jr., COFFEY and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

A-Abart Electric Supply, Inc. ("A-Abart") filed a three-count complaint in the district court against Emerson Electric Company ("Emerson") and Littman Brothers Energy Supplies, Inc. ("Littman"). Count I alleged that both Emerson and Littman violated Section I of the Sherman Act, 15 U.S.C. § 1. Count II charged Emerson with breaching a contract to sell A-Abart 552 ceiling fans and related accessories. Count III charged Littman with tortious interference with A-Abart's contractual relations with Emerson and with A-Abart's prospective economic relationship with Emerson. All three parties moved for summary judgment. The district court entered summary judgment against A-Abart on all three counts. A-Abart appeals the summary judgment order. In a separate appeal arising from the same litigation, A-Abart contests the district court's imposition of a $2,500 fine on A-Abart's counsel pursuant to Fed.R.Civ.P. 11. We consolidated these two appeals and now affirm.

## FACTUAL BACKGROUND

In 1988, Emerson, a Missouri corporation and manufacturer of electrical products, began to market a new line of ceiling fans across the country, including the Chicago, Illinois area. A-Abart and Littman were both in the retail ceiling fan business in the Chicago area.

On September 8, 1988, representatives of Emerson met with representatives of Littman to present Littman with a proposed marketing strategy for the new line of Emerson ceiling fans. During this meeting, the Littman representatives asked the Emerson representatives the names of other local distributors who would be carrying the new line. Emerson stated that it intended to call on every retail seller in Chicago and a decision would then be made to whom they would make their fans available for sale. Littman representatives advised their Emerson counterparts that if Emerson intended to make their line of ceiling fans available to Littman's primary competitor, A-Abart, Littman was not interested in carrying the new ceiling fan line. Littman stated that it made this business judgment concerning the broader market area because it did not want to commit its advertising and marketing resources to introduce and promote this new product if the market share would be insufficient to justify the expense.

On October 18, 1988, Emerson met with A-Abart in Chicago to present its marketing plan for the new ceiling fan. Price lists, brochures and purchase order forms were supplied to A-Abart. On November 18, 1988, A-Abart submitted to Emerson a purchase order for 552 ceiling fans on a form provided by Emerson. According to A-Abart's president, the order had been solicited by an Emerson Chicago area sales representative who gave A-Abart a verbal assurance that it would be accepted.

After the September 8th, 1988 meeting, there were no further discussions between Emerson and Littman until November 30, 1988, when Emerson informed Littman that it had decided to sell to Littman and not to A-Abart. A-Abart does not contend, and there is no record evidence demonstrating that Emerson and Littman agreed with any other retailer to exclude A-Abart from the selling of the new ceiling fan line.

The district court, after finding no material facts in dispute, entered summary judgment against A-Abart on all three counts. The court also sanctioned A-Abart's counsel pursuant to Fed.R.Civ.P. 11. We affirm.

## I.

A summary judgment motion should be granted by the district court "only when there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing a grant of summary judgment, we must view the record and all inferences drawn therefrom in the light most favorable to the party opposing the motion." *Beard v. Whitley County REMC*, 840 F.2d 405, 409–10 (7th Cir.1988) (citations omitted).

## II.

In Count I of its complaint, and again on appeal, A–Abart alleges that Emerson's refusal, at Littman's insistence, to sell its new ceiling fan line to A–Abart constituted a *per se* violation of Section I of the Sherman Act. The Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.

In *Business Electronics Corp. v. Sharp Electronics Corporation*, 485 U.S. 717, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988) the Supreme Court considered this same argument on a factual record strikingly similar to the one presented in this appeal. In *Business Electronics*, an electronic calculator retailer, Hartwell, informed its supplier, Sharp Electronics, that it would terminate its dealership unless the supplier ended its relationship with a rival retailer, Business Electronics. Sharp then terminated Business Electronics' dealership. Business Electronics brought suit alleging that Sharp and Hartwell had conspired to terminate Business Electronics' dealership and that such a conspiracy was illegal *per se* under § 1 of the Sherman Act.

The Supreme Court began its analysis in *Business Electronics* by noting that

"[o]rdinarily, whether particular concerted conduct violates § 1 of the Sherman Act is determined through case-by-case application of the so-called rule of reason—that is, 'the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition.' *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 [97 S.Ct. 2549, 2557, 53 L.Ed.2d

568] (1977).... We have said that *per se* rules are appropriate only for 'conduct that is manifestly anticompetitive,' *id.*, at 50 [97 S.Ct. at 2557], that is, conduct 'that would always or almost always tend to restrict competition and decrease output.' "

*Business Electronics*, 485 U.S. at 723, 108 S.Ct. at 1519 (citations omitted).

The Court further noted that

"[a]lthough vertical agreements on resale prices have been illegal *per se* since" 1911 "we have recognized that the scope of *per se* illegality should be narrow in the context of vertical restraints. In *Continental T. V., Inc. v. GTE Sylvania Inc.*, ... we refused to extend per se illegality to vertical nonprice restraints, specifically to a manufacturer's termination of one dealer pursuant to an exclusive territory agreement with another.... We concluded that vertical nonprice restraints had not been shown to have such a 'pernicious effect on competition' and to be so 'lack[ing] [in] ... redeeming value' as to justify *per se* illegality.... Rather, we found, they had real potential to stimulate interbrand competition, 'the primary concern of antitrust law.' "

*Business Electronics*, 485 U.S. at 724, 108 S.Ct. at 1519 (emphasis added) (citations omitted).

 Thus, as the district court stated, "the only two relevant questions are whether the restraint imposed by the alleged 'conspiracy' between Emerson and Littman is 'vertical' or 'horizontal' and, if vertical, whether the restraint involves prices or price levels." A–Abart argues that the alleged agreement between Emerson and Littman "though facially vertical" should be considered a horizontal restraint of trade. Appellant's brief at 27. *Business Electronics* makes clear that the kind of restraint alleged by A–Abart is vertical. "Restraints imposed by agreement between competitors have traditionally been denominated as horizontal restraints, and those imposed by agreement between firms at different levels of distribution as vertical restraints." *Business Electronics*, 485

U.S. at 730, 108 S.Ct. at 1523. "[A] restraint is horizontal not because it has horizontal effects, but because it is the product of a horizontal agreement." *Business Electronics*, 485 U.S. at 731 n. 4, 108 S.Ct. at 1523. Here, the alleged conspiracy was a vertical one because it was between two firms at different levels in the distribution spectrum: Emerson, a manufacturer, and Littman, a retailer. The alleged conspiracy was the product of a vertical agreement.

■ *Business Electronics* thus requires that A–Abart demonstrate that an agreement on price levels was part of the alleged Emerson–Littman conspiracy. A–Abart, however, does not argue that the agreement involved price or price levels. A vertical restraint of trade that does not involve price levels is not *per se* illegal under the Supreme Court's interpretation of § 1 of the Sherman Act.

■ A–Abart's only chance for a successful claim on these facts under § 1 of the Sherman Act is to demonstrate that under a "rule of reason [test] ... all of the circumstances of a case ... [demonstrate that] a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Business Electronics*, 485 U.S. at 723, 108 S.Ct. at 1519. "Under that analysis the plaintiff must show that the challenged restraint has an adverse impact on competition in the relevant market." *Bi–Rite Oil Company, Inc. v. Indiana Farm Bureau Cooperative Association, Inc.*, 908 F.2d 200, 203 (7th Cir. 1990). A–Abart, in its brief, makes a one sentence mention of the rule-of-reason test, but only to assert that there is no "legal economic justification" for Emerson's decision. A–Abart does not attempt to make the required showing of an adverse competitive effect on the relevant market and therefore does not make out a claim under the rule-of-reason test. Thus, the district court's summary judgment as to A–Abart's Sherman Act claim was appropriate.

### III.

■ Count II of A–Abart's complaint is a breach of contract claim founded on Emerson's failure to supply A–Abart with 552 ceiling fans in response to a purchase order from A–Abart. A–Abart concedes that this purchase order form is the only written evidence of what it alleges was a verbal agreement between it and Emerson to sell the 552 fans. The Illinois Statute of Frauds stands as a bar to viewing this alleged agreement as an enforceable contract. The Illinois provision provides that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought...." Ill.Rev. Stat., ch. 26, ¶ 2–201(1). *See, e.g., Lee v. Voyles*, 898 F.2d 76, 78 (7th Cir.1990). A–Abart does not dispute that the alleged agreement involving the 552 ceiling fans falls within the terms of the Illinois statute of frauds. A–Abart also concedes that Emerson, the party against whom it seeks to enforce the agreement to sell the 552 fans, did not sign the purchase order, the only written evidence of the agreement. Thus, it would appear that the statute of frauds stands as an absolute bar to A–Abart's breach of contract claim.

A–Abart seeks to evade the preclusive effect of the statute of frauds by arguing that, under Illinois law, the doctrine of promissory estoppel prevents Emerson from asserting the statute of frauds defense. In this argument, A–Abart relies on *R.S. Bennett & Co. v. Economy Mechanical Industries, Inc.*, 606 F.2d 182, 187 (7th Cir.1979), in which we predicted, "not without some difficulty, [that] the Illinois Supreme Court would permit the plaintiff to seek recovery on a promissory estoppel theory" even though the defendant "successfully defends on the basis of the statute of frauds." We have since become less sure of the prediction made in *R.S. Bennett*, observing that "there is arguably some question with respect to whether the Illinois Supreme Court would allow a party to raise the statute of frauds as a defense in an action premised upon promissory estoppel, especially in cases arising under the U.C.C." *Evans v. Fluor Distribution Com-*

*panies,* 799 F.2d 364, 368 (7th Cir.1986). *See, also, Monetti, S.P.A. v. Anchor Hocking Corporation,* 931 F.2d 1178, 1186 (7th Cir.1991) (summarizing arguments for and against the position taken in *R.S. Bennett* and noting that the question had not been resolved by the Illinois courts) and *Goldstick v. ICM Realty,* 788 F.2d 456, 464 (7th Cir.1986) ("We hesitate to rely on *Bennett* because there is a question whether it is a correct statement of Illinois law.").

We need not enter this thicket to decide whether in Illinois the doctrine of promissory estoppel can save a claim otherwise barred by the statute of frauds because A–Abart has failed to make the required showing to sustain a claim of promissory estoppel. In Illinois, the "elements of promissory estoppel are: a promise unambiguous in terms, with reliance thereon by the promisee, with such reliance being expected and foreseeable by the promisor, and with the promisee in fact relying on the promise to his injury.... [I]n order to invoke the doctrine, the promisee's reliance must be reasonable and justifiable." *Geva v. Leo Burnett Company,* 931 F.2d 1220, 1223 (7th Cir.1991) (quoting *Vincent Di Vito, Inc. v. Vollmar Clay Products Co.,* 179 Ill.App.3d 325, 128 Ill.Dec. 393, 395, 534 N.E.2d 575, 577 (3d Dist.1989)). A–Abart has not produced any evidence or made an argument demonstrating that it relied to its detriment on the alleged promise by Emerson to sell it the ceiling fans. Thus, the promissory estoppel argument fails.

## IV.

Count III of the appellant's complaint charged Littman (1) with intentionally interfering with contractual relations between A–Abart and Emerson and (2) with intentionally interfering with A–Abart's prospective economic advantage in its dealings with Emerson.

Under Illinois law, "[t]he elements of the tort of intentional interference with contractual rights include (1) the existence of a valid and enforceable contract between the plaintiff and another, (2) the defendant's awareness of this contractual rela-

tion, (3) the defendant's intentional and unjustified inducement of a breach of the contract which causes a subsequent breach by the other, and (4) damages." *Mannion v. Stallings & Co.,* 204 Ill.App.3d 179, 149 Ill.Dec. 438, 443, 561 N.E.2d 1134, 1139 (1 Dist.1990). *See also Olaf v. Christie Clinic Association and HMO,* 200 Ill.App.3d 191, 146 Ill.Dec. 647, 650, 558 N.E.2d 610, 613 (4th Dist.) *app. denied,* 135 Ill.2d 559, 151 Ill.Dec. 385, 564 N.E.2d 840 (1990); *Prudential Insurance Co. v. Van Matre,* 158 Ill.App.3d 298, 110 Ill.Dec. 563, 567, 511 N.E.2d 740, 744 (Ill.App.3d Dist.), *app. denied,* 117 Ill.2d 553, 115 Ill.Dec. 409, 517 N.E.2d 1095 (1987). A–Abart, as we have related above, did not have an enforceable contract with Emerson to buy the 552 ceiling fans. The inability to establish the existence of a valid and enforceable contract is obviously fatal to a claim of intentional interference with contractual relations.

That leaves A–Abart's intentional-interference-with-prospective-economic-advantage claim. The elements of this tort are: "(1) plaintiff must have a reasonable expectation of entering a valid business relationship; (2) defendant must purposely interfere and defeat this legitimate expectancy; and (3) defendant's actions must cause harm to plaintiff." *Kurtz v. Illinois National Bank,* 179 Ill.App.3d 719, 128 Ill.Dec. 562, 567, 534 N.E.2d 1007, 1012 (4th Dist.), *app. denied,* 126 Ill.2d 559, 133 Ill.Dec. 669, 541 N.E.2d 1107 (1989) (citations omitted). Under Illinois law, a party's interest in prospective economic advantage, however, receives less protection than its enforceable contract rights:

"An individual with a prospective business relationship has a mere expectancy of future economic gain; a party to a contract has a certain and enforceable expectation of receiving the benefits of the contract. When a business relationship affords the parties no enforceable expectations, but only the hope of ... benefits, the parties must allow for the rights of others. They therefore have no cause of action against a bona fide competitor unless the circumstances indicate

unfair competition, that is, an unprivileged interference with prospective advantage."

*Fishman v. Estate of Wirtz,* 807 F.2d 520, 546 (7th Cir.1987) (quoting *Belden Corp. v. InterNorth, Inc.,* 90 Ill.App.3d 547, 552, 45 Ill.Dec. 765, 769, 413 N.E.2d 98, 102 (1st Dist.1980)). Illinois courts have adopted the formulation of the Restatement (Second) of Torts, § 768 (1979) in defining unlawful competition. *Fishman,* 807 F.2d at 547 (citing *Galinski v. Kessler,* 134 Ill. App.3d 602, 610, 89 Ill.Dec. 433, 439, 480 N.E.2d 1176, 1182 (1st Dist.1985)). Under that formulation,

> "(1) [o]ne who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor ... does not interfere improperly with the other's relation if (a) the relation concerns a matter involved in the competition between the actor and the other and (b) the actor does not employ wrongful means and (c) his action does not create or continue in an unlawful restraint of trade and (d) his purpose is at least in part to advance his interest in competing with the other."

*Id.* See also *Candalaus Chicago, Inc. v. Evans Mill Supply Company,* 51 Ill. App.3d 38, 9 Ill.Dec. 62, 366 N.E.2d 319 (1st Dist.1977) (basing the same doctrine on Restatement of Torts § 768 (1939)). "This 'competitors privilege' arises when the business relation concerns a matter involving competition between the actor and the competitor." *Mannion,* 149 Ill.Dec. at 445, 561 N.E.2d at 1141.

A-Abart's allegations that Littman intentionally interfered with its business expectancy with Emerson, even if true, fall within this competitor's privilege exception to the tort of intentional interference with prospective economic advantage. Littman was acting to advance its interests at the expense of its competitor A-Abart by securing the Emerson contract and denying it to A-Abart. Littman's actions, as we have held above, did not contribute to an unlawful restraint of trade. Thus, Littman is protected by the competitor's privilege from liability for A-Abart's claim of intentional interference with prospective economic advantage.

## V.

We turn finally to the question of sanctions. A-Abart challenges the imposition by the district court of a $2,500 fine on A-Abart's counsel pursuant to Fed.R.Civ.P. 11 to be paid to the Clerk of the United States District Court. The district court imposed the fine after finding that A-Abart's anti-trust claim was sanctionable. Rule 11 provides that an attorney's or party's signature on each paper filed in district court,

> "Constitutes a certificate by the signor that the signor has read the pleading, motion, or other paper; that to the best of the signor's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

"The district court employs an objectively reasonable standard in assessing whether an attorney's conduct violates the rule." *Thompson v. Duke,* 940 F.2d 192, 195 (7th Cir.1991). We have interpreted Rule 11 as creating four requirements:

> "There must be 'reasonable inquiry' into both fact and law; there must be good faith (that is, the paper may not be interposed 'to harass'); the legal theory must be objectively 'warranted by existing law or a good faith argument' for the modification of existing law; and the lawyer must believe that the complaint is 'well grounded in fact'. The attorney filing the complaint or other paper must satisfy all four requirements."

*Thompson,* 940 F.2d at 195 (quoting *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1080 (7th Cir.1987)).

We review district courts' decisions as to the appropriateness of imposing Rule 11 sanctions under a deferential "abuse of discretion" standard. *Mars Steel Corp. v.*

*Continental Bank N.A.*, 880 F.2d 928, 933 (7th Cir.1989) (en banc). We adopted this deferential standard of review "because the trial court alone has an intimate familiarity with the relevant proceedings...." *Id.* at 933 (citation omitted).

■ The district court's decision to impose Rule 11 sanctions on A–Abart's counsel was not an abuse of its discretion. Throughout the litigation in the district court, A–Abart argued that the defendants' alleged actions amounted to a *per se* violation of the Sherman Act. This argument, as the district court noted in dismissing it, "flies in the face" of the unambiguous doctrine set out in *Business Electronics*. The district court, during the hearing in which it ruled on the motion for Rule 11 sanctions, observed that "[a]t no time did plaintiff allege that Emerson and Littman reached an agreement as to price or price levels. Therefore, it can readily be seen that the alleged agreement should be characterized as a vertical non-price agreement." As we noted above, once this determination has been made, the agreement cannot be considered a *per se* violation of § 1 of the Sherman Act under the *Business Electronics* doctrine.

A–Abart argued in the district court that the facts of *Business Electronics* are distinguishable from those in the instant case. But we agree with the district court that at no time did "[p]laintiff.... explain why one restraint is vertical, that is the one in [*Business Electronics*], while the [instant] one is horizontal.... At no time did plaintiff claim that other dealers joined with Littman, thus creating a horizontal agreement." In fact, the district court viewed A–Abart's anti-trust claim as so frivolous that it warned the defendants that "plaintiff's arguments were so clearly contrary to Supreme Court authority, it would not expect to see excessively bloated fee statements in connection with plaintiff's anti-trust claim...."

The district court cited other reasons for imposing Rule 11 sanctions on A–Abart's counsel. In A–Abart's reply memorandum of law in support of its amended motion for partial summary judgment, A–Abart's counsel, as the district court noted, "quoted

cases and language from the dissent" in *Business Electronics* as if from the majority opinion. Moreover, in its memorandum, A–Abart's counsel quoted from *Cernuto, Inc. v. United Cabinet Corp.*, 595 F.2d 164 (3rd Cir.1979), without informing the district court that the Supreme Court's *Business Electronics* decision had rejected the reasoning excerpted from the *Cernuto* decision. Thus, we are persuaded that the district court did not abuse its discretion in imposing Rule 11 sanctions on A–Abart's counsel for filing a frivolous antitrust claim.

We now turn to the argument made by both Emerson and Littman that this appeal is frivolous and that A–Abart should be sanctioned pursuant to Federal Rule of Appellate Procedure 38. Under that rule, "[i]f a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee."

Rule 38 plays a vital role in our appellate system. " 'The purpose of [Rule 38] is twofold. First, it operates to compensate winners of judgments in the district court for the expense and delay of defending against meritless arguments in the court of appeals. Second, it seeks to deter such appeals and thus to preserve the appellate court calendar for cases worthy of consideration.' " *Spiegel v. Continental Illinois National Bank*, 790 F.2d 638, 650–51 (7th Cir.1986), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986) (quoting *Ruderer v. Fines*, 614 F.2d 1128, 1132 (7th Cir.1980)).

■ The necessary prerequisites for awarding Rule 38 damages and costs to an appellee are well established. "In order to award Rule 38 sanctions, we must make two determinations: (1) the appeal is frivolous and (2) sanctions are appropriate." *Williams v. Leach*, 938 F.2d 769, 775 (7th Cir.1991) (citations omitted). As to the first question, an appeal is frivolous when the " 'result is foreordained by the lack of substance to the appellant's arguments,' " *Williams*, 938 F.2d at 775 (quoting *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 938 (7th Cir.1989) (en banc)) or " 'when it merely restates arguments that the district court properly rejected.' " *Mes-*

*tayer v. Wisconsin Physicians Service Insurance Corporation*, 905 F.2d 1077, 1081 (7th Cir.1990) (citation omitted).

■ Plaintiff's appeal of the district court's dismissal of the Sherman antitrust claim meets both these standards. The result of A–Abart's appeal of the dismissal of its antitrust claim was "foreordained" by the clear doctrine set out in *Business Electronics* and merely restated "arguments that the district court properly rejected." An appeal of the dismissal of a frivolous claim is frivolous.

A–Abart's other arguments on appeal were also frivolous. It failed to offer evidence of its reliance on Emerson's alleged promise to sell it the 552 ceiling fans, a necessary element of promissory estoppel, its only plausible basis for prevailing on its contract claim. A–Abart failed to address until its reply brief the doctrine of competitor's privilege, which provided Littman with a successful affirmative defense, both in the trial court and in this appeal, to the charge of intentional interference with prospective economic advantage. Even in its reply brief, A–Abart argued that Littman could be liable for this tort "even regardless and separate and apart from the antitrust aspects involved" and that the tort itself is "a form of unfair competition." But as we made clear earlier in the decision, echoing the district court's dismissal, the plaintiff's argument here necessarily depended upon a finding that Littman had committed an antitrust violation. Without such a showing, A–Abart could not demonstrate that Littman's conduct was unfair or illegal and thus outside the scope of the protection offered by the competitor's privilege.

Having decided that A–Abart's appeal was frivolous, we must now decide whether these are appropriate circumstances for the imposition of sanctions. "Sanctions are appropriate if 'the appeal was prosecuted with no reasonable expectations of altering the district court's judgment and for purposes of delay, harassment or sheer obsti-

nacy." *Williams*, 938 F.2d at 775 (quoting *Reid v. United States*, 715 F.2d 1148, 1155 (7th Cir.1983)).

In the instant case, "[n]ot only were these arguments properly rejected; they were so groundless as to be held sanctionable by the district court." *Mestayer*, 905 F.2d at 1081. Moreover, we conclude that "appellant's attorney could not have had a reasonable expectation that the same arguments would prevail in this court and merely delayed the inevitable by filing this appeal.'" *Id.* (quoting *Mays v. Chicago Sun–Times*, 865 F.2d 134, 139 (7th Cir. 1989)).

We have other reasons for awarding damages and costs in this case. A–Abart, in its brief to this court, calls our attention to *Cernuto, Inc. v. United Cabinet Corp.*, 595 F.2d 164 (3rd Cir.1979) and notes that it was cited by the Supreme Court in *Business Electronics*, 485 U.S. at 742 n. 4, 108 S.Ct. at 1529. But A–Abart failed to disclose that this citation was from the dissenting opinion in *Business Electronics*. Moreover, it is clear that the Supreme Court intended to overrule *Cernuto* in *Business Electronics;* the Court cited it as one of the cases representing a split in the circuits that it settled in *Business Electronics*. *Cernuto* was quite emphatically on the losing side of that split. *Business Electronics*, 485 U.S. at 720 n. 1, 108 S.Ct. at 1517. Nevertheless, the appellants lead their reply brief with a citation to *Cernuto*.[1]

Rule 38 damages and costs may be assessed against either an appellant or the appellant's attorney. *Mestayer*, 905 F.2d at 1081. In this case, the virtual repetition by the appellant's attorney of arguments properly rejected by the district court leads us to believe that we should assess attorneys' fees and other costs of this appeal against A–Abart's attorney. Pursuant to Circuit Rule 38, effective February 1, 1992, the appellant's attorneys may file a brief within 15 days of the date of this opinion to show cause why sanctions should not be imposed; Emerson and Littman are ordered to file with this court within the

---

**1.** As we discussed above, A–Abart included the same misleading citation in memoranda sub- mitted to the district court.

same 15–day period a statement of the attorneys' fees and other costs they incurred in defending this appeal.

## VI.

We affirm both the district court's entry of summary judgment in favor of Emerson and Littman and its imposition of Rule 11 sanctions against A–Abart's attorney, and assess the costs of this appeal, including attorneys' fees, against A–Abart's attorney.