DANIELSON FOOD PRODUCTS, INC., Plaintiff,

v.

POLY–CLIP SYSTEM, International Beteligungen Ghmb, d/b/a, Poly–Clip System Corp., and Cacique, Inc., Defendants.

No. 99 C 6760.

United States District Court, N.D. Illinois, Eastern Division.

June 21, 2000.

Richard D. Grossman, Chicago, IL, for Plaintiff.

Richard M. Franklin, Baker & McKenzie, Chicago, IL, Steven J. Thompson, Hedlund Hanley & John, Chicago, IL, Garret G. Rasmussen, Patton Boggs LLP, Washington, DC, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

When Bismarck remarked that no one should wish to know too much about the making of laws or sausages, he meant that

the process was distasteful but the results were not. This antitrust case involves the making of sausages, but, while the sausages are probably fine, the legal result is not so tasty. The central question is whether an antitrust plaintiff who complains that it was shut out by an exclusive dealing contract or group boycott that the defendants interpret to exclude only the plaintiff and no one else, has stated a claim for a per se violation of the antitrust laws under either theory. I conclude that it has not done so even though the challenged agreement would appear to be anticompetitive and arguably even a naked restraint of trade. Nonetheless, given absolutely crystal clear precedent squarely governing this case, the agreement is not per se illegal.

Danielson Food Products ("Danielson") of Chicago, Illinois, is one of the five largest producers of chorizo sausage in the country, producing over 300,000 pounds of chorizo a month. In late 1998, it tried to buy a new sausage-making machine from Poly–Clip System Corporation ("Poly–Clip"), a German manufacturer of sausage production machinery, specifically a TSA–120 unit, that would save it five cents per foot of sausage casing used. Because Danielson uses at least 500,000 feet of sausage casing a month, this would run into real money very quickly. No comparable machine on the market is compatible with Danielson's present production line and would achieve similar savings. Poly–Clip replied with a letter dated January 9, 1999, stating that it had entered into an arrangement with Cacique, Inc., an Ohio-based competitor of Danielson that is also one of the largest chorizo producers. Poly–Clip said it would sell Danielson the machines in September 2000. Danielson tried to buy the TSA–120 through an intermediary, but Poly–Clip would not sell a TSA–120 to anyone who would sell it to Danielson. Danielson then sued Poly–Clip and Cacique under section 1 of the Sherman Act, 15 U.S.C. § 1, alleging a per se violation of the antitrust laws. The defendants move to dismiss for failure to state a claim, and I grant the motion.

 The issue here is whether Poly–Clip's agreement with Cacique, excluding only Danielson from the world of possible customers, constituted a per se illegal restraint of trade under Section 1 of the Sherman Act. A restraint of trade is prohibited: (1) if it is per se unreasonable because restraints of that sort are generally anticompetitive, mere "naked" restraints without any corresponding consumer benefit; or (2) if the restraint violates the "rule of reason," that is, if analysis of the circumstances shows that a challenged practice is unreasonably anticompetitive in a particular situation. *Polk Bros. v. Forest City Enterprises, Inc.*, 776 F.2d 185, 188 (7th Cir.1985). Because the antitrust laws are designed to encourage vigorous competition as well as to promote economic efficiency and maximize consumer welfare, *MCI Communications Corp. v. AT & T Co.*, 708 F.2d 1081, 1113 (7th Cir.1983), the overarching standard, as the courts interpret it today, is whether the defendants' actions diminish competition and injure consumer welfare. Section 1 claims are normally evaluated under the rule of reason analysis rather than a per se analysis. *See Wilk v. American Medical Ass'n*, 895 F.2d 352, 359 (7th Cir.1990).

 Danielson specifically asks me to find that it has stated claim for a per se violation. It concedes that if "the agreement under consideration is subject to a rule of reason analysis," the defendants are "correct" that the case must be dismissed because Danielson "has not supplied a factual basis on which to conduct a rule of reason analysis." Under an exclusive dealing theory, though, there is no per se violation. The Supreme Court "refused to extend per se illegality to vertical non-price restraints, specifically to a manufacturer's termination of one dealer pursuant to an exclusive territory agreement with another," because such restraints "had real potential to stimulate interbrand competition, 'the primary concern of antitrust

law.'" *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 724, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988) (internal citations omitted). The challenged agreement between the defendants here is vertical "because it was between two firms at different levels in the distribution spectrum," here a manufacturer and a purchaser of capital goods. *A–Abart Electric Supply, Inc. v. Emerson Elec. Co.*, 956 F.2d 1399, 1402 (7th Cir.1992), and therefore gets a rule of reason analysis.

Under the rule of reason, Danielson might well have been able to state a claim even on the present pleadings. It would have had to show (1) the defendant had market power in the relevant market, and (2) the challenged agreement was harmful to competition and so failed to promote consumer welfare. To show market power indirectly, Danielson could have argued either that the challenged agreement resulted in "a significant fraction of buyers or sellers [being] frozen out of a market by the exclusive deal," *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 45, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984) (O'Connor, J. concurring), because it was one of the five largest sausage producers, or that Poly–Clip "offers a unique product that competitors are not able to offer" *Parts and Elec. Motors, Inc. v. Sterling Electric, Inc.*, 826 F.2d 712, 720 (7th Cir.1987) (*citing Hyde*, 466 U.S. at 17, 104 S.Ct. 1551), viz., the TSA–120.

Moreover, while some exclusive dealing agreements may have pro-competitive effects, such as promoting long term stable relations between buyers and sellers or stimulating the development of new products, *see Hyde*, 466 U.S. at 45, 104 S.Ct. 1551, it is hard to see that the usual benefits of such an agreement apply here because the exclusivity term was directed solely against Danielson. The agreement is not long term, and Poly–Clip states that it will sell the machine to Danielson when the agreement is up. Neither would this agreement appear to provide an incentive for innovation or new product development. The defendants' response that "competition-for-the contract is a form of competition that antitrust laws protect rather than proscribe," *Paddock Publications, Inc. v. Chicago Tribune Co.*, 103 F.3d 42, 45 (7th Cir.1996), is not to the point in a case involving an agreement that simply cuts out one competitor, rather than awarding the contract to one competitor.

■ A plaintiff "cannot plead herself out of court by citing to the wrong legal theory or failing to cite any theory at all." *Ryan v. Illinois Dep't of Children and Family Servs.*, 185 F.3d 751, 764 (7th Cir.1999). However, Danielson expressly eschews the rule of reason case, and puts all its money on a per se theory. An express waiver by experienced counsel is binding if anything is. *See United States of America v. Boyd*, 208 F.3d 638, 645 (7th Cir.2000) (waiver of recusal). And because the agreement is a vertical nonprice agreement, it is not a per se violation. *See Business Electronics Corp.*, 485 U.S. at 724, 108 S.Ct. 1515.

■ Danielson's alternative theory is that the agreement is a per se illegal group boycott or concerted refusal to deal. *See, e.g., Fashion Originators' Guild of America, Inc. v. F.T.C.*, 312 U.S. 457, 312 U.S. 668, 61 S.Ct. 703, 85 L.Ed. 949 (1941) (organization of dress manufacturers and fabric designers boycotted retailers and manufacturers who dealt in copies of original designs or refused to promise not to deal in such copies); *Klor's, Inc. v. Broadway–Hale Stores, Inc.*, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959) (retailers combined with appliance manufacturers and distributors to boycott competing retailer). A per se unlawful boycott has two essential elements: (1) at least some of the boycotters are competitors of each other and the target, and (2) the boycott is designed to protect the boycotters from competition with the target. *United States Trotting Ass'n v. Chicago Downs Ass'n, Inc.*, 665 F.2d 781, 788 (7th Cir.1981). Danielson argues that it is a competitor of Cacique, and the agreement is designed to

protect Cacique *from competition from Danielson.* That is plausible as far as it goes.

However, agreements that are illegal per se are for the most part horizontal, that is, between competing sellers, which Poly–Clip and Cacique are not. This is like the case of the insurance underwriter and the insurance agent who refused to make the plaintiff broker an agent of the underwriter. *Products Liability Ins. Agency, Inc. v. Crum & Forster Ins. Companies,* 682 F.2d 660 (7th Cir.1982). The Seventh Circuit said that "their relationship is 'vertical'—analogous to that between a manufacturer and his distributor." *Id.* at 663. To remove any ambiguity, the court explained that an agreement between two parties at different levels of production or distribution to exclude a third at the same level as one of the parties is vertical. A horizontal agreement must be between at least two parties at the same level to exclude a third. "If multiple manufacturers or multiple distributors were involved, the agreement would have an admixture of the horizontal, but there is nothing of that sort here." *Id.* Danielson offers no reason to depart from this rule. Because "vertical agreements are illegal per se only if their purpose is price fixing," *id.,* a nonprice vertical agreement is not a per se illegal group boycott. Danielson might have stated a rule of reason claim under a group boycott theory, but it expressly disavows this approach. Asking for per se or nothing, Danielson gets nothing.

Therefore, although the proconsumer advantages of the anybody-but-plaintiff agreement challenged here are not evident or plausibly argued by the defendants, I conclude that there has been no per se violation of the antitrust laws and, accordingly, I GRANT the defendants' motion to dismiss the claim.