In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3017

42ND PARALLEL NORTH,

Plaintiff-Appellant,

v.

E STREET DENIM COMPANY,
WESTERN GLOVE WORKS,
BUFFALO de FRANCE CORP.,
GRASS ROOTS CLOTHING CO., INC.,
and URBAN OUTFITTERS, INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 4090--Wayne R. Andersen, Judge.

Argued January 23, 2002--Decided February 13, 2002


   Before BAUER, COFFEY, and EVANS, Circuit
Judges.

   EVANS, Circuit Judge. On January 23,
2002, the same day our panel heard oral
arguments in this case, the front page of
the business section of the New York
Times reported:

   The Netscape Communications Corporation,
the commercial pioneer in Web browsing
software, whose fortunes faded after a
withering assault from Microsoft, filed a
broad antitrust suit yesterday against
the company. Netscape charged that its
decline was a result of Microsoft's
illegal tactics, echoing many of the
findings in the government's case against
the company.

   The Microsoft/Netscape (Netscape's
corporate parent is AOL Time Warner)
brouhaha is the sort of battle one thinks
about when considering lawsuits under
federal antitrust laws. One does not
ordinarily conjure up the same sort of
images when thinking about two little
retail stores in suburban Chicago duking
it out over blue jeans and T-shirts. But
that's what we've got before us on this
appeal. The district judge thought that

the tussle didn't measure up as an antitrust suit and he dismissed it. As we see it, the district judge got it right, and his dismissal of the suit is affirmed.

We draw the facts from the amended complaint, accepting its allegations as true. 42nd Parallel North and E Street Denim Company are retailers of specialty clothing competing for the same customers, those in the "brand driven" and "fashion oriented" money-spending age group of 9 to 24. Both sell their wares in the central business district of Highland Park, a suburb north of Chicago, with approximately 32,000 residents; the central business district boasts 570 retail stores, including The Gap, Banana Republic, Saks Fifth Avenue, Eddie Bauer, Jos. A. Bank, Ann Taylor, The Limited, and Bath and Body Works.

After it opened for business in 1996, 42nd's suppliers included Buffalo de France, which manufactures and distributes denim blue jeans and sportswear under the trade name "Buffalo Jeans, David Britton"; Western Glove Works, which manufactures and distributes denim blue jeans and sportswear under the trade name "Silver Jeans"; and Grass Roots Clothing, which manufactures and distributes clothing, including fashion T-shirts. 42nd made substantial sales of each of these three companies' product lines.

42nd alleges that since that time (dates are not really specified), E Street threatened and coerced these manufacturers (who are also named as defendants) not to do business with 42nd. Buffalo Jeans, which had been 42nd's main supplier, has refused to fill its orders, claiming that the orders were lost or it did not have the products to ship. It has shipped only out-of-season styles or unpopular sizes. Buffalo Jeans claimed it was having supply problems. 42nd asserts that Buffalo Jeans' justifications are false because:

E Street and other stores in the area are filled with the same product that 42nd has been unable to obtain. Likewise, other retail stores throughout the United States and in other parts of Illinois have had little or no problems having [their] orders filled by Buffalo Jeans or

obtaining sales and support services.

Western Glove also has refused to fill 42nd's orders, claiming they were either lost or not received. Noting that at some point the owner/president of Western Glove acknowledged that "he was under pressure by E Street not to continue to sell to 42nd," 42nd asserts that E Street's threats and coercion caused Western Glove to stop selling to 42nd. Grass Roots has also refused to fill 42nd's orders; a Grass Roots representative said that E Street "placed pressure on it not to sell to 42nd."

42nd further asserts that beginning in September of 1999 it has asked Urban Outfitters (another named defendant) that manufactures and distributes jeans and sportswear, to fill 42nd's orders. Urban Outfitters has refused, citing E Street as the reason.

42nd brought a claim under sec.sec. 4 and 16 of the Clayton Act based on a violation of sec. 1 of the Sherman Act. It sought damages for lost retail sales of the products at issue, losses in the form of markdowns caused by the shipment of out-of-season styles and unpopular sizes, lost sales of associated items, and a reduction of customer goodwill. The district judge dismissed the complaint (and relinquished jurisdiction over a pair of supplemental state law claims) because 42nd had failed to allege an anticompetitive effect on the market. We review a ruling on a motion to dismiss de novo. Although we have instructed district judges to be wary of dismissing antitrust complaints under Federal Rule of Civil Procedure 12(b)(6), see Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106-07 (7th Cir. 1984), the district judge here acted properly as this suit is a nonstarter.

Section 1 of the Sherman Act proscribes "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. sec. 1. Our starting point is Business Electronics Corp. v. Sharp Electronics Corp., 485 U.S. 717 (1988). In Sharp, a manufacturer of electronic calculators terminated one dealer in response to another dealer's complaints about the

first dealer's price-cutting habits. The shunned dealer sued the manufacturer, claiming an antitrust violation. The Court noted that any conspiracy to terminate the dealer constituted a vertical and not a horizontal restraint because it involved an agreement between participants at different levels of distribution. Id. at 730 n.4. Moreover, because the restraint did not involve an agreement on prices, it was not per se illegal but rather subject to a Rule of Reason analysis. Id. at 735-36. The Court declined to adopt a per se prohibition, noting that a retailer's ability to exploit an increase in intrabrand market power is limited by the presence of interbrand competition. Id. at 725. Moreover, vertical nonprice restraints give dealers an incentive to promote a manufacturer's products and invest in providing corollary services, and thus have the potential to stimulate interbrand competition. Id. at 724-25.

The Rule of Reason analysis weighs these possible effects and requires a plaintiff to show that the challenged restraint has adversely impacted competition in the relevant market. A-Abart Elec. Supply, Inc. v. Emerson Elec. Co., 956 F.2d 1399, 1402-03 (7th Cir. 1992) (citation omitted); Havoco of Am., Ltd. v. Shell Oil Co., 626 F.2d 549, 554-56 (7th Cir. 1980). The defendants argue that there are problems with how 42nd defined the relevant market in this case, but the district judge did not find that ground fatal and, for a moment or two, we will follow his lead. We will assume that the relevant market consists of the designer jeans (made by Buffalo Jeans, Western Glove, and Urban Outfitters) and fashion T-shirts (made by Grass Roots) sold in Highland Park's central business district. To determine whether defendants' conduct has unreasonably restrained competition in that market, we consider the challenged restraint's effects on both intrabrand and interbrand competition. Valley Liquors, Inc. v. Renfield Importers, Ltd., 678 F.2d 742, 745 (7th Cir. 1982) ("Valley I"). Because measuring and balancing these effects can be difficult, this circuit has adopted a threshold requirement, a "shortcut" as it were, that the plaintiff needs to show that the defendant has market power. Id. A company has market power if it can raise prices above a competitive level

without losing its business. Valley Liquors, Inc. v. Renfield Importers, Ltd., 822 F.2d 656, 666-68 (7th Cir. 1987) ("Valley II").

But, in this case, a question arises: Which defendant? There are four manufacturers and one retailer named, so 42nd's theory of anticompetitive effects could depend on market power at either of two levels. When a manufacturer possesses market power, a decision to terminate a dealer threatens to have an anticompetitive effect on the relevant market because consumers cannot turn to other product brands when intrabrand competition is diminished. Cf. Valley I, 678 F.2d at 745. But no such threat is raised here. There are no allegations that any of the manufacturer-defendants have market power in the central business district of Highland Park; the presence of at least the three named manufacturers of designer jeans suggests otherwise. Nor is there any indication that Grass Roots works the fashion T-Shirt corner alone. 42nd also does not assert that the manufacturers have conspired with one another, thereby leveraging their individual market shares into market power. Quite simply, the amended complaint indicates that the manufacturer-defendants sell their own brands, which compete with others.

The amended complaint appears to depend on the specter of retail market power. If E Street, a multibrand retailer, possesses market power in retailing the competing product lines of designer jeans and fashion T-shirts in Highland park, then it can reduce both intrabrand and interbrand competition by pressuring manufacturers not to deal with other retailers. But 42nd nowhere alleges that E Street has such market power. It instead asserts that E Street has eliminated 42nd as a price competitor. Antitrust laws protect competition and not competitors, Brown Shoe Co. v. United States, 370 U.S. 294, 320 (1962); see also Car Carriers, 745 F.2d at 1109 (noting that "it is the function of sec. 1 to compensate the unfortunate only when their demise is accompanied by a generalized injury to the market"), and although 42nd alleges that it can no longer compete with E Street over the jeans and T-shirts at issue, it gives no indication that others cannot. 42nd does

not allege that E Street and 42nd were the main rivals selling designer jeans and T-shirts in Highland Park or that they were even particularly important ones. Nor are there allegations regarding either store's market share during the relevant time period. Competition among retailers in Highland Park may well be thriving, as the complaint itself suggests with regard to Buffalo Jeans: "E Street and other stores in the area are filled with the same product that 42nd has been unable to obtain" (italics added). 42nd argues that the district judge misread this allegation and claims that it really meant that only stores outside the relevant market stock Buffalo Jeans. The district judge did not err by relying on the words of the complaint.

42nd next argues that market power is inferable from the fact that E Street raised its prices for the products after coercing the manufacturers. But this allegation is incomplete. Just because a retailer raises prices doesn't mean competition has been harmed. The key inquiry in a market power analysis is whether the defendant has the "ability to raise prices without losing its business," Valley II, 822 F.2d at 668, and there are no allegations, direct or inferable, that E Street can do so. As we noted, there may well be other competing stores to which consumers can turn.

We also cannot close our eyes to the fact that 42nd's proposed geographic market is absurdly small. See Car Carriers, 745 F.2d at 1110 ("In considering a motion to dismiss, the court is not required to don blinders and to ignore commercial reality."). The central business district of Highland Park--not even the whole of Highland Park!--would have to be something of a consumer's black hole for us to think that trendy shoppers wanting better prices on designer jeans and T-Shirts could not venture to other commercial areas to find them. It doesn't take a cartographer to know that Highland Park is located in the densely populated north shore suburbs of Chicago, nor does it take a market researcher to know that "Chicagoland" is home to many shopping venues where consumers could find designer jeans and T-shirts. By any sensible awareness of commercial reality, 42nd was swimming in a much larger

competitive sea than the complaint lets on.

As the district judge said, this suit concerns a "competitive battle between two little shops in Highland Park," and although the amended complaint alleges that 42nd was spurned, at E Street's behest, by four manufacturers, there is no indication that the larger romance between the young public and its designer jeans and T-shirts was in any way affected. The judgment of the district court dismissing 42nd's amended complaint is AFFIRMED.